Hillsborough,
June 25, 1931.

EDWARD H. WASON *v.* NASHUA.

*Wason & Guertin* and *Doyle & Doyle* (*Mr. Paul J. Doyle* orally), for the plaintiff.

*Lucier & Dowd* and *Robert E. Earley* (*Mr. Lucier* orally), for the defendant.

SNOW, J.   The plaintiff acquired title to the northerly half of his lot, known as the Parkinson property, January 11, 1912.   This estate had been under his control as agent since 1886.   The southerly half, known as the Arnold property was conveyed to him by deed dated June 13, 1917.   The existing blocks on both lots have been occupied by retail merchants since before the memory of the witnesses called. From their earliest recollection until 1903-4, a sidewalk four to five feet in width extended from Pearl street along the front of the blocks and the northerly side of the Hunt store.   For a like period the remainder of the space hereinafter referred to as the outside area had remained in a rough state, receiving only such attention as the owners or their tenants saw fit to give it.   In the years 1903-4, with the permission of the owners, the sidewalk was widened and recovered and the outside area surfaced by the city, a shallow gutter marking the easterly line between it and the finished street.   At later dates, with like permission, said area was resurfaced.

From time immemorial the outside area had been used by the tenants and their customers for passing to and from the stores, for the transportation of goods and as a parking space.   For their accommodation hitching posts were maintained along the curbing by the owners and tenants.   People other than the customers freely traveled along the sidewalk, and sometimes hitched their horses, or later parked their cars, in the adjoining area.   The nature, character and extent of the public use of the walk and of the outside area respectively for different periods will later appear.

The defendant concedes that the tract in question is covered by the plaintiff's title deeds, but claims that, prior to the date of taking, the public had acquired an easement for travel therein either (1) through dedication by the owner and public acceptance through long user, or (2) by prescription.   While the language of the exceptions to the denial of the defendant's motions for a nonsuit and a directed verdict, strictly construed, was appropriate only to raise the latter issue, the

arguments of counsel have proceeded on the apparent understanding that the exceptions cover both issues, and they are accordingly so treated here.

As evidence of an express dedication the defendant relies upon a condition in the deed of Peter Clark to Thomas Chase and John Taylor, all ancestors in the plaintiff's title, dated August 7, 1835, together with recitals and references thereto in subsequent deeds. It reads: "with the condition that if ever any building or buildings is or are erected upon the premises any part of which or all of which shall project into Main street beyond a line drawn from the front side of the Washington House to the front side of Jesse Esty's and Peter Clark's houses on said Main street, then the premises and all right and title to the same shall revert and absolutely pass back to said Peter Clark." The Washington house was north, and the other named properties south, of the *locus*. The face of the Parkinson and Arnold buildings is on the line referred to. In January, preceding his deed to Chase and Taylor, Clark had acquired title to a tract fronting two hundred feet on Main street which included not only the property here in question but also the land for one hundred feet further south on which presumably his house as well as the Esty house, later the Hunt block, stood. Judicial notice may be taken of the fact that the *locus in quo* was in the line of the view, from the Clark and Esty properties, of a business section of the city. In the absence of any evidence of a prior conveyance by Clark of the southerly half of his lot, it may be assumed that the condition in his deed to Chase and Taylor was a building restriction in favor thereof and appurtenant thereto. In any event the condition merely forbade, on penalty of forfeiture to the grantor, the erection of buildings on the part conveyed east of the designated building line. No right of passage was reserved to the grantor, and no conveyance of any right of user was made to the city or to the public. If, as claimed, projections on the Parkinson and Arnold blocks had at times been extended easterly of the prohibitive line, such breach of the condition in no way inured to the city or public. The condition was not a dedication to public use.

The defendant claims, however, that the condition, if not an express dedication, was nevertheless a recognition by Clark of the existence of Main street on his property which gave rise to an implied dedication, or at least established a basis for a claim of right, which followed by long public user, has ripened into prescriptive title. The claim that it was such an acknowledgment finds support in a literal interpretation of the words "if . . . any building . . . is . . . erected upon

the premises . . . which shall project *into Main street* beyond" the designated line. The italics are ours. The abnormality and needlessness of a provision restraining a grantee from building *"into"* a bounding street, however, raises a doubt as to whether the literal import of the language expressed the grantor's intention. The only conceivable purpose of such a restriction would be to add the penalty of forfeiture to that imposed by the law for an invasion of the highway. Had that been the grantor's purpose, however, more explicit language would have been used in declaring the existence of the highway. Moreover, the grantor's resort to outside monuments to designate the restricting line tends to show that he was creating a new building line of which there was no evidence on the tract conveyed; that the Parkinson and Arnold blocks had not then been built, and that the granted property was yet unimproved. It is conceded that the Clark and Esty houses set back from the street twenty-seven feet. It is improbable that the street had been extended across the unimproved half of the grantor's lot only to end at the front lawn of the Esty house. The uselessness of such a jog in the intersecting streets in a residential section is apparent and tends strongly to disprove its existence. By "projecting into Main street beyond" the fronts of the houses named was evidently meant—projecting beyond the westerly line of Main street extended on the line indicated by the enumerated monuments. The language is so construed. While the condition was material upon the issue of damages, and admissible in explanation of the subsequent conduct of the owners, it affords no evidence to support findings, either of an implied dedication by Clark, or of color of title in the public.

The testimonial evidence addressed to the defendant's claim of title requires separate treatment as respects the sidewalk and the outside area; and also as respects the latter for the periods prior to and after 1883. The subject-matters and periods will be considered in the inverse order named.

I. As respects the outside area, the defendant relies solely upon prescription for its title to the easement. The evidence of the public use of this area for the period from 1883 to 1924 was met by counter evidence of interruptions thereof, and of the assertion of proprietorship by acts inconsistent therewith. A public watering trough had been maintained from early times at a point in Main street adjacent to the northeast corner of the plaintiff's Parkinson lot. For a period, variously stated to be 1883-4 to 1903-5, there had been maintained, for the benefit of the owner's tenants, platform scales used for both

private and public weighing, an office and a small coal pocket, all situated along the line of Pearl street between the trough and the Parkinson block. The plaintiff's evidence tended to show that these appliances barred passage by vehicles across the lot to and from Pearl street except as they crossed the platform or used a portion of the sidewalk; and that the public entered the area from Main street only on the invitation and by the permission of the owners and their tenants. There was also evidence that the owners, on several occasions, variously stated as in 1888-93, 1907-8 and in 1910-11, and in 1913, had asserted their rights to exclude vehicular traffic from the space by fences of ropes and barrels, and for divers periods had exercised exclusive dominion over the tract by granting rights to occupy portions of it for various private purposes inconsistent with the public use. While this evidence was conflicting it clearly could be found therefrom that no prescriptive rights of travel over this area had accrued to the city or public after 1883.

In support of the public use of the area prior to 1883 the defendant offered the testimony of two aged witnesses, the substance of which follows. Eugene P. Johnson whose recollection covered the period from 1856, when he was eleven years of age, to 1924, testified that from his earliest memory the space was open and freely used by the public and that "they did drive back and forth . . . there" up to the curb, and "along the curb." He could suggest no occasion for its use except business at the stores, and was unable to name anyone who used it except the owners and customers, but added "would say" they used it "independently of going in as customers." Henry H. Davis, covering the period from 1863, when twelve, to the date of the trial, testified that the space was "open to the public to travel as they saw fit just the same as any other part [of the street];" that "anybody having business . . . with the stores would drive up . . . to sell . . . or receive goods"; that he had seen people drive in front of the Parkinson building. He admitted that "quite likely" they were teams doing business with the storekeepers, and that it was "fair to say if they had occasion to go in there, they wanted to go in to do business with the storekeepers," but added "it was open for anybody to drive in there if they wished to." The evidence of two of the plaintiff's witnesses touched the latter part of the period in question. Henry L. Sanderson, whose memory extends back to the last of the seventies and early eighties, says the space was then open, and that "anybody could use it if they saw fit" but does not remember public travel. Warren Hooper, who began work in the fall of 1883 as a clerk in one of the

stores on the property, says the space was used by the tenants for their teams and that the public did not drive in there very much except as they used the scales; that "people, generally, understood it was private property and kept off"; that "it was very rare that anybody came in there, to drive in"; that "it was like driving into your front yard." As we have seen during this period this area remained unsurfaced and in its rough state and there was no evidence of care or repairs of the premises by the city.

To establish a highway by prescription it must appear that the way was used by the general public continuously without interruption for a period of twenty years (P. L., c. 74, s. 1), under a claim of right without the permission of the owner. These facts, when found, give rise to a conclusive presumption that the highway has at some previous time been established pursuant to law by the proper authority. *Wallace v. Fletcher*, 30 N. H. 434, 449, 452; *Campton's Petition*, 41 N. H. 197, 198; *Stevens v. Nashua*, 46 N. H. 192, 198; *State v. Morse*, 50 N. H. 9, 15; *Smith v. Putnam*, 62 N. H. 369, 372; *Jean v. Arsenault, ante*, 72; 1 Elliott, Roads and Streets, ss. 189, 191.

The facts necessary to support this presumption like other factual issues must, however, rest on proof. *Taylor v. Gerrish*, 59 N. H. 569, 571; *Wells v. Parker*, 74 N. H. 193, 195, 196. Evidence of continuous and uninterrupted public use of the premises for the statutory period, though uncontradicted, is insufficient alone to establish prescriptive title as a matter of law. When no charter of right or other color of title in the public has been shown it must appear that the user was adverse, that is, under a claim of right. Where, as here, this essential element is left to be implied solely from the public use, it must appear that such use was of a character calculated to apprise the owner that it was had under a claim of right. *Jean v. Arsenault, supra*, and cases cited; *State v. Nudd*, 23 N. H. 327, 338; *Burnham v. McQuesten*, 48 N. H. 446, 454; *Smith v. Putnam, supra*, 372; *Beach v. Morgan*, 67 N. H. 529, 531; *Gietl v. Smith*, 320 Ill. 467; *Jones v. Railroad*, 211 Mass. 521. The nature of the use must be such as to show that the owner knew, or ought to have known, that the right was being exercised, not in reliance upon his toleration or permission, but without regard to his consent. *Gilford v. Company*, 52 N. H. 262, 266, 267; *Bailey v. Carleton*, 12 N. H. 9, 16, 18; *Griffin v. Bartlett*, 55 N. H. 119, 124; *Vandegrift v. Burke*, 98 Md. 230.

In so far as the members of the public who used the premises here were patrons of the plaintiff's tenants, their occupation was in response to his implied invitation, and not in derogation of his rights.

It could be found on the evidence that the use of the space by the general public was not of a character or extent to interfere with that of the owners, their tenants and customers, but, on the other hand, was so far incidental thereto that reasonable men in the place of the owners would not have supposed that the public was occupying it under a claim of right. It is sufficient to say that the adverse character of the use is not conclusively established. The defendant's motion for a nonsuit with respect to such outside area was properly denied.

II. As respects the sidewalk the plaintiff says that when he came into control of the Parkinson block in 1886, an old brick walk, between four and five feet in width, hereinafter called the ancient walk, ran along the face of the Parkinson and Arnold blocks and the northerly side of the Hunt store; that, in 1903-4 with his consent, the city relaid the brick therein and later widened the walk, but that otherwise it remained unchanged. The existence of the walk is shown from a time prior to 1856 but no evidence was submitted as to the character or extent of its use before the last of the seventies. The uncontradicted evidence, however, is that it was continuously traveled by the pedestrian public, in common with the owners, their tenants and customers, without interruption, from some time prior to 1880 until 1924.

The only evidence submitted in support of a public easement in the walk, other than confirmatory testimony of its continued use during this period, comes from the plaintiff. On cross-examination he testified as follows: "Q. Was that always used by pedestrians who came down that west side of Main street, in their journey north or south? A. That is what the owners had it built for. . . . And for people to walk on that didn't want to go into stores, and for customers that wanted to trade in the store, to go in . . . Q. So that, whether you wanted to go into a store or not, you could use that sidewalk to go down Main street and back? A. Certainly. Q. And people had been doing it, from 1886, to your knowledge, right up to the time it was changed? A. . . . There has been a sidewalk there . . . , for pedestrians and customers for those stores ever since I came here." He further testified that "strangers . . . walked up and down the sidewalk, freely" and that the "narrow sidewalk . . . has been used ever since I have been in Nashua, [1886] by all the stores, and the travelling public. . . . Q. People had been travelling there constantly, hadn't they? A. Yes . . . and they have done it all these years, on the sidewalk, in connection with the tenants of the stores, patrons of the

stores. If you went up to that block and into a store you were a patron of the store, and that was so with the lessee's, the owner of the store and the lessee of the property, tacit consent. Q. What of the people that went right by the door, from time to time? A. Those that went by the door without any business so mingled with those that had business to go into the blocks, it was pretty difficult to find out which was which."

In so far as the defendant's claim to a public easement in the walk is based upon prescriptive use, what has been said as to the evidence in support of a like claim to the outside area is equally applicable here. The adverse character of the public use is not conclusively established.

It remains only to consider the effect of the plaintiff's concession as to the purpose of the owners in the construction of the walk. To constitute a dedication which, aided by twenty years continuous use (P. L., c. 74, s. 1), will ripen into title, there must have been an intention, expressed by word or act, to grant the public a perpetual right of passage. State v. Atherton, 16 N. H. 203, 209; State v. New-Boston, 11 N. H. 407, 412, 413-414; Elliott, Roads & Streets, ss. 133, 137, 138, 139, 179. Neither an unexpressed intention to grant a perpetual right nor an expressed intention to bestow a revocable license is sufficient for that purpose. The plaintiff testified to no word or act of any ancestor in title prior to 1886, and he had no earlier personal knowledge. His testimony as to the purpose of former owners is, in effect, no more than a declaration of their mental attitude. It is merely a concession that their acts showed a purpose to invite the public to travel the walk. It does not of itself prove an expressed intention of the owners to dedicate the walk to the public. If such an intention can be found it must be by implication from the conceded mental attitude of the plaintiff's ancestors in title in building the walk, their acquiescence in its long continued use by the public and other competent circumstances. Moreover, where the supposed dedication rests upon implication, the subsequent user which will constitute an acceptance and ripen it into title, must be shown to be adverse. Stevens v. Nashua, 46 N. H. 192, 199; Harriman v. Moore, 74 N. H. 277, 280. It follows that both questions, namely, the intention to dedicate, and the adverse character of the user essential to make such intention effective, presented issues of fact for the jury. While the plaintiff's concession that the owners built the walk for their tenants, their customers and the public to travel upon, is consistent with an intention to confer upon the public an indefeasible title, it is not necessarily inconsistent with an intent to retain the title and to grant a

revocable license. Nor was the public user in conjunction with the use of the owners and occupants of the property shown to be of such a character as to necessarily apprise the owners that it was had under a claim of right. As these facts, essential to a title by dedication, were not conclusively shown the motions of the defendant for a nonsuit and directed verdict as respects the ancient walk, as well as respects the outside area, were properly denied.

Following is the record covering the exception to the allowance of the plaintiff's argument: "*Mr. Doyle*: But a community, such as Nashua, or a town, have got the advantage over the individual, in just one way, if the City of Nashua, represented by fairminded officials, want to take this over, Mr. Wason's property, for a public street, in the wisdom of the law makers of New Hampshire, there is a proper way to do it; if Mr. Wason and the City of Nashua couldn't agree upon the price of this 2700 square feet, if they couldn't agree—possibly Mr. Wason asked more than the City wanted to pay—there was a way for the City of Nashua to force Wason to give up that property, but they must pay him what Wason—What is fair and just.—*Mr. Lucier:* I object to that. *The Court:* To the argument in which Brother Doyle suggests there may have been a disagreement between the City and Brother Wason? *Mr. Doyle:* I haven't suggested that. I am illustrating a situation. *Mr. Lucier:* May I have my exception? *The Court:* The exception may be noted. *Mr. J. J. Doyle:* Gentlemen, if it turns out that the City of Nashua and Mr. Wason couldn't agree, there was a law provided by the law makers of New Hampshire for the City of Nashua to force Wason to give up that private property for public purposes, but when the City of Nashua does that, it must pay Mr. Wason for this land, a fair price."

The plaintiff's contentions that the exception was ambiguous and that the record does not raise an issue for this court are not well taken. It is clear that court and counsel understood the objection was directed to the suggestion of plaintiff's attorney that there may have been a disagreement upon the price of the land taken, and not to any erroneous statement of the law of eminent domain. The court's tacit refusal to sustain the objection, following a recital of the remark, amounted to an allowance of the argument (*Maravas* v. *Corporation*, 82 N. H. 533, 537) which was confirmed by the express grant of the exception thereto.

Under the law of the trial, the only issues before the jury were the alleged title of the city to an easement in the plaintiff's land, and, the assessment of the plaintiff's damages, if any. The intimation that

there had been a disagreement as to the price of the tract taken was foreign to either issue and unsupported by any evidence. There was not only a want of evidence of such disagreement prior to the trial, but of any negotiations whatever. The plaintiff denied knowledge of the taking until the street was in process of construction.

The potential form of the statement of the unproved fact was hardly less objectionable than an affirmative statement would have been. *Fuller* v. *Railroad*, 78 N. H. 366, 371. The argument amounted to an indirect assertion that the difference between the parties was as to the value of the property taken, whereas the primary issue was one of title. The prejudicial character of the statement is self-evident. No attempt was made to withdraw or palliate it and no instructions were requested that it be disregarded. The verdict is set aside and the order here is

*New trial.*

All concurred.