Belknap
No. 7452

### THE LEO FOUNDATION

### v.

### STATE OF NEW HAMPSHIRE

March 31, 1977

*Nighswander, Lord, Martin & KillKelley,* of Laconia (*Mr. David J. KillKelley* orally) for the plaintiff.

*David H. Souter,* attorney general, and *Roger G. Burlingame,* assistant attorney general (*Mr. Burlingame* orally), for the state.

LAMPRON, J.    Plaintiff appealed to the superior court from the lay out of a highway to the public waters of Manning Lake in Gilmanton under RSA 235:1. Trial by the Court (*Batchelder,* J.), with a view, resulted in a decree dismissing the appeal. During the course of trial, plaintiff seasonably excepted to the court's rulings, to the dismissal of its appeal, and to the court's denial of its eight requests for findings of fact and rulings of law. All questions of law raised by plaintiff's exceptions were reserved and transferred.

On appeal to this court plaintiff argues only two of the issues raised by its exceptions below. First that the commission failed to lay out a highway from an existing public highway. Second that the decision of the commission should be void because one of the commissioners was an employee of the highway department. We affirm the trial court's rulings on both these issues.

On March 1, 1967, ten residents of the state of New Hampshire petitioned the Governor and Council to lay out a highway from an existing public highway in Gilmanton to Manning Lake in accordance with RSA ch. 235. The Governor and Council appointed a commission to conduct a hearing to determine whether there was occasion for the laying out of such a highway, and if so, to determine its location. A hearing was held on November 18, 1967, at

which representatives of plaintiff were present and argued against the layout. By return of layout dated August 28, 1968, the commission determined that there was occasion for the laying out of such highway, and that the location of said highway should be over land owned by plaintiff. This determination was accepted by the Governor and Council on September 30, 1968. Plaintiff appealed the determination of the commission to the superior court. RSA 235:5. Trial of the case was held commencing February 5, 1975. It is the appeal therefrom which is now before us.

In order to lay out a highway to public water the commission must determine that there is occasion to lay out such a highway "from any existing highway to any public water in this state . . . ." RSA 235:1. There is no dispute that Manning Lake, a natural body of water in excess of twenty acres, is "public water" within the meaning of this section. RSA 271:20. However, plaintiff argues that Pond Road, from which the proposed highway was laid out, was not shown to be an existing "highway" as defined by RSA 230:1 (Supp. 1975). This section defines "highways" as follows: "Highways are only such as are laid out in the mode prescribed therefor by statute, or roads which have been constructed for public travel over land which has been conveyed to a city or town or to the state by deed of a fee or easement interest, or roads which have been dedicated to the public use and accepted by the city or town in which such roads are located, or roads which have been used for public travel . . . for twenty years prior to January 1, 1968 . . . ."

At trial there was no evidence produced that Pond Road had been laid out in the mode prescribed by statute, that it had been constructed for public travel over land conveyed to the town of Gilmanton, or that it had been dedicated to public use and accepted by the town. David M. Bickford, a selectman for the town of Gilmanton, and a resident for over sixty years, testified that it would be "virtually impossible" to find any records showing that Pond Road had been formally laid out as a town road. However, he did not testify that Pond Road had not been so laid out; nor did he testify that Pond Road had not been established in any other manner described by RSA 230:1 (Supp. 1975).

Mr. Bickford testified that Pond Road had been used by the public as a public highway "for at least the last thirty or forty years." Mr. Paul R. Morse, who owned property abutting on

Pond Road from the mid 1940's through the late 1960's, testified that the road was used generally by the public during that period of time. Mr. Morse testified that members of the public often traveled up Pond Road looking for a place to swim. There was also testimony that Pond Road was used by the public during that period of time to gain access to a beach area on Lake Manning, located near the beginning of the road. Such use, while it may have been "intermittent and of slight volume," is nevertheless sufficient to sustain a finding that Pond Road was established by prescription, the use being "characteristic of the kind of road claimed." *Blake v. Hickey,* 93 N.H. 318, 321–22, 41 A.2d 707, 709 (1945). Such use is also continuous when not interrupted by assertion of any paramount right. *Williams v. Babcock,* 116 N.H. 819, 368 A.2d 1166 (1976); *Jean v. Arsenault,* 85 N.H. 72, 75, 153 A. 819, 820–21 (1931).

■ Plaintiff argues that Pond Road was used only for private travel by plaintiff and its guests, and by abutters. Although these people may use the road more frequently than other members of the general public, they too are members of the public, and such use of the road is consistent with the definition of public use. There was no evidence that plaintiff or any of the abutters had ever attempted to bar others from using Pond Road. There was evidence from which the trial court could properly find that the members of the public using Pond Road did so under a claim of right. *White Mt. &c. Co. v. Levesque,* 99 N.H. 15, 17, 104 A.2d 525, 526 (1954).

Other evidence at the trial also showed Pond Road to be a public highway. In the early 1940's, shortly before plaintiff acquired its property known as Camp Manning, or Camp Leo, the portion of Pond Road which lay beyond Moulton Brook, located in the camp property, was discontinued. In 1942, the portion of Pond Road running between the entrance to the camp property and Moulton Brook was also discontinued by vote of the town meeting of Gilmanton. Were Pond Road merely a private way, these discontinuances would not have been necessary. In addition, when plaintiff appealed the town's action in 1952 and petitioned for damages, it consistently referred to Pond Road as a public highway.

■ Finally, plaintiff introduced evidence that it, rather than the town, had undertaken to repair, maintain, and plow Pond Road. However, these actions were accompanied by repeated attempts by

plaintiff, at least through the late 1960's to have the town perform these functions. Plaintiff could be found to have then considered the road to be a public highway for which the town was responsible. Whether or not the town fulfilled its responsibility to maintain and plow the road does not alter its public character. *See* 2 B. Elliott and W. Elliott, The Law of Roads and Streets § 1174 (4th ed. 1926). The testimony regarding public use of Pond Road covered a period of time from at least the mid 1940's to the late 1960's. Nonuse for any significant period of time, or adverse private use, would not constitute a discontinuance of a public highway. *See Thompson v. Major,* 58 N.H. 242 (1878); *Windham v. Jubinville,* 92 N.H. 102, 25 A.2d 415 (1942); RSA 249:30.

In denying plaintiff's requests for findings and rulings that Pond Road was not an existing highway, or that it was a private way, and in dismissing plaintiff's appeal, the trial court necessarily found that Pond Road was a public highway, established by prescription or otherwise. *See Post Road Realty, Inc. v. Zee-Bar, Inc.,* 117 N.H. 136, 370 A.2d 282 (1977). Such finding by the trial court, which also had the benefit of a view, is supported by the record. We therefore affirm the trial court's rulings. *Gerrish v. Wishbone Farm,* 108 N.H. 237, 231 A.2d 622 (1967).

█ The trial court also denied plaintiff's request for a ruling that the commission was an unfair tribunal because one of its three members, Maurice Caswell, was employed full time by the highway department as a right of way agent. In *Papademas v. State,* 108 N.H. 456, 237 A.2d 665 (1968), we held that the appointment of an employee of the highway department to a layout commission is not forbidden by the provisions of RSA ch. 235. *Id.* at 458, 237 A.2d at 667. There being no evidence presented of an interest of the highway department contrary to that of the public, we further held the claim of conflict of interest to be "too attenuated and unsubstantial" to void the commission's decision. *Id.* at 458–59, 237 A.2d at 667.

In this case plaintiff claims that because the payments for damages for the property taken and for construction come from the highway department's budget, and because the highway department made the determination, prior to the convening of the commission, that there was no public access to Lake Manning, there was a showing of a conflict of interest such as to render the commission's decision void.

The only evidence presented on this issue was the testimony of Mr. Caswell himself. However, he testified that he had not been involved in the determination that there was no public access to Lake Manning. He also testified that the commission had only been concerned with the location of the right of way to Lake Manning, and not with the cost of construction. There is nothing in the record to indicate that the department had any interest in whether the public access was constructed or how it should be laid out. On the basis of the record before us we cannot conclude that, as a matter of law, a conflict of interest was shown which would invalidate the commission's actions. The trial court was in the best position to evaluate Mr. Caswell's testimony. As the court's ruling on the issue is not unreasonable and is supported by the record, it is affirmed. *Powell v. Gagne,* 102 N.H. 256, 154 A.2d 750 (1959); *Hahn v. Hemenway,* 96 N.H. 214, 72 A.2d 463 (1950).

*Exceptions overruled.*

BOIS and DOUGLAS, JJ., did not sit; the others concurred.