Rockingham
No. 89-480

### DAVID P. CATALANO & a.

v.

### TOWN OF WINDHAM

August 3, 1990

*Carpenito & Rogers P.A.*, of Salem (*James W. Carpenito* on the brief and orally), for the plaintiffs.

*Beaumont, Mason & Campbell P.A.*, of Salem (*Bernard H. Campbell* on the brief and orally), for the defendant.

JOHNSON, J. The defendant, the Town of Windham (Town), appeals the decision of the Superior Court (*Gray*, J.) requiring the Town to maintain two Windham roads, Doiron and Cole, as Class V public highways. For the reasons stated below, we affirm.

Doiron Road begins at Route 111 in Salem and extends northerly into Windham along the west shore of Shadow Pond. Approximately .22 miles from the Windham/Salem border, Doiron Road forks. The east branch, called Cole Road, briefly follows the pond's shoreline before looping back to Doiron. Doiron then continues for less than a mile alongside Shadow Pond and dead-ends. The portion of Doiron Road north of the fork, and all of Cole Road, are the subject of this lawsuit. Hereinafter, "Doiron Road" will refer only to that portion of the road in dispute.

The earliest references to these roads and the lots abutting them are found on two subdivision plans, one entitled "Lot Division of Land on [Shadow Pond], Windham, New Hampshire, Owned by W.W. Cole; Scale 40 ft. = 1 inch; June 1908," and the other entitled "Plan of Lakeview on West Shore Shadow Lake; Windham, N.H.; Marie E. McCarthy; Scale 1 inch = 40 feet; 1919." The lots abutting Cole and Doiron Roads were individually sold, and most of the deeds

to these lots include rights-of-way over the roads. There is no evidence, however, that the land over which the roads themselves passed was ever sold by the original developers of the subdivision to the lot owners or others or dedicated to the town. Hence, this land does not appear to belong to the lot owners, the plaintiffs in this suit.

This litigation began in 1988, when the Town informed the plaintiffs that it would no longer plow snow from Doiron and Cole Roads or otherwise maintain them. The plaintiffs responded by filing a petition for declaratory judgment and a request for injunctive relief. The Superior Court (*Gray*, J.) ordered the Town to continue winter maintenance of the roads pending a hearing on the merits, and indicated that it would then take a view of Doiron and Cole Roads when a hearing was scheduled on the merits.

At trial, the Town admitted that it had plowed snow on Doiron and Cole Roads since the early 1940's. Witnesses for the plaintiffs testified that the Town had repaired the roads in the summer and plowed snow in the winter from the 1930's until 1988. Evidence in the form of minutes from town meetings was also presented, revealing that the Town had twice before considered cutting off maintenance to Doiron and Cole Roads. Each time, however, town selectmen decided to continue the maintenance, noting at one time that "the Town has maintained this road for so many years that we must continue to do so." The trial court specially found that the Town "maintained the roads as a full part of its general summer and winter maintenance program."

Out of the thirty residences abutting Doiron and Cole Roads, twenty-three are year-round residences. The record does not reveal the number of school-age children living in these homes. The last census figures indicate that sixty-seven residents of Windham live on these roads. Aside from the plaintiffs' regular use of the roads, the evidence shows that members of the general public have used the roads frequently in the winter and in the summer to reach Shadow Pond for recreational purposes and to patronize a grocery store once located on Doiron Road.

At the close of the hearing on the merits, the trial judge stated he would take a view of the roads if he thought it would aid him as the trier of fact. The Town urged him to do so, but the court eventually made its rulings without a view.

The trial court ruled in favor of the plaintiffs and found, "based on a strong preponderance of the evidence that the roads are highways as defined in RSA 229:1 by reason of their being used for public

travel for more than 20 years prior to January 1, 1968." In addition, the court stated,

> "Since the Court has found that the roads are public highways and further finds that they are not state highways but rather Town roads not subject to gates and bars; not discontinued and *have* been maintained ... by the Town, the Court finds the roads to be Class V highways which the Town has the duty to maintain regularly."

(Emphasis in the original.)

On appeal, the Town first argues that the trial court applied an incorrect legal standard in determining that Doiron and Cole Roads are public highways. The Town therefore urges us to reverse this ruling. Second, the Town asserts that there was insufficient evidence presented at trial to support the court's finding that the Town "maintained" Doiron and Cole Roads or to support its ruling that the roads qualify as Class V highways. Third, the Town argues that the trial court's failure to take a view was plainly wrong and constitutes reversible error.

The issue in this case is whether the roads, already constructed and in use for decades, will be maintained by the town as public highways or will be maintained as private roads by the lot owners. Regardless of the outcome in this case, the town or the lot owners will continue to have only an easement of passage over the land, the fee title remaining in the original owners of the land or their heirs or legatees. 39 AM. JUR. 2d *Highways Streets and Bridges* § 158.

## I. *Public Highways by Prescription*

We agree with the Town's assertion that the trial court used an incorrect legal standard in determining that Doiron and Cole Roads are public highways. However, because the trial court reached the correct result, we will not disturb its ruling. *See Lemay v. Rouse*, 122 N.H. 349, 352, 444 A.2d 553, 555 (1982). Generally, "[w]hen a trial court reaches the correct result, but on mistaken grounds, this court will sustain the decision if there are valid alternative grounds to support it." *Id.*

"Public highways" are defined in RSA 229:1. There are four ways in which a roadway may become a public highway:

> "Highways are only such as [1] are laid out in the mode prescribed therefor by statute or [2] roads which have been constructed for public travel over land which has been conveyed to a city or town or to the state by deed of a fee or easement interest, or [3] roads which have been dedicated to

the public use and accepted by the city or town in which roads are located, or [4] roads which have been used as such for public travel, other than travel to and from a toll bridge or ferry, for 20 years prior to January 1, 1968, and shall include the bridges thereon."

The trial court based its ruling on the fourth alternative definition of "highway," that is "roads which have been used as such for public travel . . . for 20 years prior to January 1, 1968 . . . ." We note that this fourth alternative is only applicable to roadways in use, at this time, for over forty years.

■ In *Wason v. Nashua*, 85 N.H. 192, 155 A. 681 (1931), this last alternative definition of a public highway was interpreted as describing the establishment of a highway by prescription:

"To establish a highway by prescription it must appear that the way was used by the general public continuously without interruption for a period of twenty years (P.L., c. 74, s. 1), under a claim of right without the permission of the owner. These facts, when found, give rise to a conclusive presumption that the highway has at some previous time been established pursuant to law by the proper authority."

*Id.* at 198, 155 A. at 685 (citations omitted). This interpretation of RSA 229:1 has not substantially changed. *See, e.g., Leo Foundation v. State*, 117 N.H. 209, 211–13, 372 A.2d 1311, 1313, *cert. denied*, 434 U.S. 890 (1977); *White Mt. &c. Co. v. Levesque*, 99 N.H. 15, 17, 104 A.2d 525, 526 (1954); *Blake v. Hickey*, 93 N.H. 318, 319, 41 A.2d 707, 708 (1945); *Windham v. Jubinville*, 92 N.H. 102, 103, 25 A.2d 415, 416 (1942). This definition has therefore been interpreted to require more than a showing of public use for twenty years; the public use must additionally be shown to have been "adverse."

The *Wason v. Nashua* court took pains to explain its interpretation of the statute:

"Evidence of continuous and uninterrupted public use of the premises for the statutory period, though uncontradicted, is insufficient alone to establish prescriptive title as a matter of law. When no charter of right or other color of title in the public has been shown it must appear that the user was adverse, that is, under a claim of right. Where, as here, this essential element is left to be implied solely from the public use, it must appear that such use was of a character calculated to apprise the owner that it was had under a claim of right. The nature of the use must be such as to show that the owner knew, or ought to have known, that the right was be-

ing exercised, not in reliance upon his toleration or permission, but without regard to his consent."

*Wason v. Nashua*, 85 N.H. at 198, 155 A. at 685 (citations omitted).

 The plaintiffs thus had the burden of proving by a "balance of the probabilities" that the public used Doiron and Cole Roads for twenty years under a claim of right without the owner's permission. *Gowen v. Swain*, 90 N.H. 383, 385–86, 10 A.2d 249, 251 (1939). It is important to emphasize that the plaintiffs who are lot owners, possessing an easement over the roads, were required to prove that the "public"—not just the lot owners and their guests—used the roads for twenty years prior to 1968 under a claim of right without the owner's permission. However, if plaintiffs were able to prove that the public used the roads openly and under a claim of right for twenty years, the burden shifted to the Town to prove that the public used the roads *with* permission of the owner. *See White Mt. &c. Co. v. Levesque*, 99 N.H. at 17, 104 A.2d at 526; *Gowen v. Swain*, 90 N.H. at 386, 10 A.2d at 251.

██ ██ The plaintiffs proved by a balance of the probabilities that the public had openly used Doiron and Cole Roads under a claim of right for twenty years prior to 1968. Intermittent use of highway is sufficient to establish prescription rights in the general public if it is "characteristic of the kind of road claimed." *Cataldo v. Grappone*, 117 N.H. 1043, 1047, 381 A.2d 1194, 1196 (1977). There was no evidence presented at trial that members of the public at any time asked permission to use the roads before or after doing so, or in any other way indicated a doubt as to their right to use Doiron and Cole Roads. Because no "Private Road" sign was ever erected on the roads, the public could assume the roads were open for public use. Thus, "such use [by the public] was of a character calculated to apprise the owner that it was had under a claim of right. The nature of the use [was] such as to show that the owner knew, or ought to have known, that the right was being exercised, not in reliance upon his toleration or permission, but without regard to his consent," *Wason v. Nashua*, 85 N.H. at 198, 155 A. at 685 (citations omitted).

 While plaintiffs made out a *prima facie* case of prescriptive use by the public, the Town failed to meet its burden of proving that the public's prescriptive use was negated by the owner's permission. Neither party offered evidence of the roads' ownership for the twenty years prior to 1968, and thus the Town failed to show that the owner of the roads gave permission to the general public to travel on them. Doiron and Cole Roads are therefore public highways.

## II. *Class V vs. Class VI Status*

The Town next asserts that for five successive years it has not maintained Doiron and Cole Roads. Therefore, it argues, the roads are Class VI roads, and the Town has no duty to maintain them.

Of the six possible statutory highway classifications, only Classes V and VI are relevant to this case. RSA 229:5 defines Classes V and VI (in pertinent part) as follows:

"VI. Class V highways shall consist of all other traveled highways which the town has the duty to maintain regularly and shall be known as town roads.

"VII. Class VI highways shall consist of all other existing public ways, and shall include . . . all highways which have not been maintained and repaired by the town in suitable condition for travel thereon for 5 successive years or more."

In addressing this issue, we must first interpret the phrase "maintained and repaired by the town in suitable condition for travel thereon," and then use that interpretation to determine whether the record supports the trial court's finding that the roads are Class V highways.

Because "maintain" is not defined in RSA chapter 229, we give the word its plain and ordinary meaning. *Appeal of Rehab. Assoc's of N.E.*, 131 N.H. 560, 565, 556 A.2d 1183, 1187 (1989). The ordinary meaning of "maintain" in this context is "to keep in a state of repair . . . , preserve from . . . decline." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1362 (unabridged ed. 1961). The Town insists that a road is not "maintained and repaired . . . in suitable condition for travel thereon" if the only work done on the road consists of snowplowing. We agree. Snowplowing alone does not keep a road in a state of repair or preserve it from decline. Maintenance or repair work such as repaving or "cold-patching" in summer is required to protect against and combat the road's yearly erosion caused by rain, snow, and freezing temperatures.

Thus, if Doiron and Cole Roads have not been maintained and repaired for the past five successive years or more, the roads are Class VI highways. This is a question of fact, and therefore the trial court's finding that the roads "*have* been maintained" will not be disturbed unless it is unsupported by the evidence. *Gelinas v. Metropolitan Prop. & Liability Ins. Co.*, 131 N.H. 154, 164, 551 A.2d 962, 968 (1988). "'Our function is to ascertain whether a reasonable person could have reached the same decision as the trial judge on the

basis of the evidence,' and 'not whether we would have found differently.'" *Id.* (citations omitted).

Although some of the evidence is conflicting, the record amply supports the court's finding of both summer and winter maintenance. Several witnesses testified that they observed people they assumed were hired by the Town repairing the surface of the roads during the past five years, and the Town admitted it plowed snow from the roads from the mid-1940's until 1988. The Town, on the other hand, argues that it never authorized most of the summer repair work done on the roads during the last ten years; however, the road agents who performed this repair work were paid by the Town for their services after submitting detailed, itemized bills to the selectmen. Most telling is the testimony of the Town's only witness, a former selectman and town engineer. He testified that in 1985, only *three* years before this litigation began, the Town "stopped road maintenance . . . except for some patching to facilitate plowing." This statement implies that until 1985, the Town both plowed *and* repaired the roads. These words partially contradict the witness's earlier testimony, but it is the province of the trier of fact, in this case the trial court, to judge the credibility of witnesses, resolve conflicts in testimony, and determine the weight to be given to different portions of a witness's testimony. *Bourdon's Case*, 132 N.H. 365, 370, 565 A.2d 1052, 1055–56 (1989). We cannot say as a matter of law that the trial court erred in ruling that the Town's maintenance of Doiron and Cole Roads met the standard required for Class V status.

III. *View of Doiron and Cole Roads*

The Town argues that the trial court's failure to take a view of the roads, after stating in its temporary order that it intended to do so, is reversible error. We disagree. "Whether to allow a view is by statute within the 'discretion' of the trial court (RSA 519:21), and its ruling will not be disturbed unless plainly wrong." *State v. Booton*, 114 N.H. 750, 757, 329 A.2d 376, 382 (1974), *cert. denied*, 421 U.S. 919 (1975) (quoting RSA 519:21). We do not find the trial court's ruling plainly wrong, and therefore we do not reverse.

The Town claims its case was prejudiced by the court's ruling. Because it relied on the court's earlier decision to take a view, the Town argues it did not prepare substitute exhibits, such as photographs, diagrams, or topographical maps, which might have helped the court determine the extent of the Town's road maintenance. The plaintiffs, however, point out that they introduced several diagrams of the area into evidence, without the Town's objection. Moreover, both parties' attorneys and their witnesses used the diagrams to aid

their oral presentations. There appeared to be no dispute that the roads had been in fair condition for decades, but then markedly deteriorated when the Town stopped its summer maintenance.

[16] There is no indication that a view of the condition of the roads, which was not in dispute, would have assisted the trial court in determining whether the roads in question have been or should be maintained by the town or the lot owners. The trial court could properly rely on testimonial evidence. Since the town was not prejudiced by the trial court's reversal of its earlier decision to take a view, we find the trial court's decision did not constitute error under the facts of this case.

*Affirmed.*

HORTON, J., did not sit; the others concurred.