Merrimack
No. 2002-638

CATHERINE MAHONEY & a.

v.

TOWN OF CANTERBURY & a.

Argued: September 10, 2003
Opinion Issued: October 14, 2003

*Finis E. Williams, III*, of Concord, by brief and orally, for the plaintiffs.

*Schuster, Buttrey & Wing, P.A.*, of Lebanon (*Barry C. Schuster* on the defendants' joint brief and orally), for defendant Fortin & Redmond Associates.

*Upton & Hatfield, LLP*, of Concord (*Barton L. Mayer* on the defendants' joint brief and orally), for defendant Town of Canterbury.

DALIANIS, J. The plaintiffs, Catherine and Everett S. Mahoney, appeal orders of the Superior Court (*Fitzgerald*, J.) finding that Old Still Road is a class VI highway established by prescription under RSA 229:1 and awarding damages to defendant, Fortin & Redmond Associates (F & R). F & R cross-appeals the amount of damages awarded. We affirm in part, vacate in part and remand.

The trial court found the following facts. The road in question is Old Still Road, located in the northwest corner of Canterbury. Old Still Road extends approximately one-half mile north from Intervale Road, which follows the Merrimack River. Where Intervale Road turns sharply to the east, Old Still Road begins, continuing northerly toward the Canterbury/Northfield border, where it intersects with Sawyer Ferry Road.

In 1982, the plaintiffs purchased approximately sixty-four acres of land in Canterbury. Old Still Road runs through their land, with fifty-two acres

lying to the west and 11.4 acres to the east. F & R purchased land along the northern border of the plaintiffs' fifty-two acre parcel. Old Still Road runs northerly onto F & R's property. F & R made arrangements with defendant Town of Canterbury (town) to use Old Still Road for its logging operations. The town informed F & R that Old Still Road is a class VI highway, and that F & R must comply with various statutes and requirements with respect to use of the road. The plaintiffs dispute the classification of Old Still Road as a public highway, asserting that it is a private road that F & R does not have a legal right to use.

This litigation began in November 2000 when the plaintiffs filed a petition for equitable relief to prevent F & R from using Old Still Road. The request for a temporary restraining order was denied. F & R began preparing Old Still Road for its logging operations, but on November 22, 2000, the trial court enjoined F & R from further activity on the road after a physical altercation occurred between Mr. Mahoney and one of F & R's employees. On March 14, 2001, the trial court issued a decision finding Old Still Road to be a public highway established by prescription pursuant to RSA 229:1. The trial court also awarded F & R damages that resulted from the five-month delay of the logging operations.

The first issue is whether the trial court properly found Old Still Road to be a class VI public highway. "Public highways" are defined in RSA 229:1. Of the four ways in which a roadway may become a public highway, the parties agree that the fourth alternative definition of RSA 229:1 applies here: "Highways are . . . roads which have been used as such for public travel, other than travel to and from a toll bridge or ferry, for 20 years prior to January 1, 1968, and shall include the bridges thereon." RSA 229:1 (Supp. 2002). The trial court based its ruling upon the fourth alternative, under which a public highway is established by prescription.

Whether a highway is created by prescription is a finding of fact. *See Blagbrough v. Town of Wilton*, 145 N.H. 118, 124 (2000). Findings of fact by a trial court are binding upon us unless they are not supported by the evidence or are erroneous as a matter of law. *Id.* The plaintiffs argue that the evidence does not support the trial court's findings.

■■ To establish a highway by prescription, it must appear that the general public used the way continuously without interruption for a period of twenty years prior to 1968, under a claim of right without the owner's permission. *Catalano v. Town of Windham*, 133 N.H. 504, 509 (1990); *Wason v. Nashua*, 85 N.H. 192, 198 (1931). In addition to demonstrating public use for twenty years, the party claiming an easement by prescription must also prove that the public use was adverse. *Town of*

*Warren v. Shortl,* 139 N.H. 240, 243 (1994). The burden of proof on the issue of permission, at least initially, lies with the claimant. *Id.*

██ F & R and the town, as the claimants, had the burden of proving by a balance of the probabilities that the public used Old Still Road for twenty years prior to 1968 under a claim of right without the owner's permission. *Catalano,* 133 N.H. at 510. Once the claimant satisfies the initial burden of production concerning public use, the burden then shifts to the landowner to produce evidence that the public use was, in fact, permitted. *Sandford v. Town of Wolfeboro,* 143 N.H. 481, 485-86 (1999). The burden of persuasion, however, remains with the claimant. *Id.* The trial court properly allocated the initial burden, and we agree with the finding that it was met.

██ In support of their claim that Old Still Road was laid out by prescription, the defendants introduced ancient maps and deeds evidencing the existence of Old Still Road. The trial court found the earliest reference to Old Still Road in the description and map that laid out West Road School District No. 2 in 1814. The map identifies two homesteads being served by the road. One homestead on the map was located on what is now the plaintiffs' property, and the other homestead was located on what is now F & R's property. Old Still Road is also shown on an 1858 map of Merrimack County by H.F. Walling and Company, which hangs in the Merrimack County Superior Court. The 1892 Town and City Atlas of the State of New Hampshire, as well as a 1911 Map of Canterbury from the "History of the Town of Canterbury, NH 1727-1912," also depict Old Still Road. Furthermore, Old Still Road is included in a 1983 map for Application for Current Use Assessment by the plaintiffs' predecessor-in-title, as well as a map the plaintiffs themselves created in 1996 or 1997, where Old Still Road is marked as a "Class VI road."

We held in *Williams v. Babcock,* 116 N.H. 819, 822 (1976), that the inclusion of a road on a map is competent evidence to support the inference of use of the road. Additionally, deeds from 1849, 1853 and 1855 refer to use of a road on the property in the plaintiffs' chain of title. The trial court determined that the road referred to in the deeds is now known as Old Still Road. The inclusion of the road in these deeds indicates use by people other than the owners of the land through which the road runs. *See Williams v. Babcock,* 116 N.H. at 823-24. There was also testimonial evidence about the use of Old Still Road during the 1950's and 1960's. Thus, there is sufficient evidence of public use of Old Still Road beginning in 1814 through the 1990's.

While the evidence of actual, continuous use was necessarily sparse, continuity of use is a relative term and is not used in an absolute sense.

*Williams*, 116 N.H. at 823. Intermittent and irregular use may be considered continuous when not interrupted by assertion of any paramount right. *Leo Foundation v. State*, 117 N.H. 209, 212 (1977). As evidenced by the maps and deeds, the public continuously without interruption used Old Still Road "for 20 years prior to January 1, 1968." RSA 229:1 (Supp. 2002).

Whether a use of property is adverse is an issue of fact. *Town of Warren v. Shortt*, 139 N.H. at 242. We will reverse the trial court's findings and rulings only if they are unsupported by the evidence or are erroneous as a matter of law. *Id.* A claimant must initially produce evidence of acts of such a character as to create an inference that the claimant adversely used the landowner's property; that is, used it without permission. *Sandford*, 143 N.H. at 485. The trial court found that the acts of the public continuously using the road from 1814 are of such a character that they create an inference of adverse use. The trial court then found that the plaintiffs were unsuccessful in rebutting the evidence.

The plaintiffs argue that an 1896 easement deed applies to Old Still Road, creating·an inference that the road is private. The trial court found that the easement was ambiguous and not applicable to Old Still Road. Even if the 1896 deed did create an easement over Old Still Road, however, it occurred after at least seventy years of continuous adverse use. Furthermore, the plaintiffs' evidence that the property owners treated the road as private during the 1800's would, in fact, support the defendants' contention that the continuous public use during that time was adverse.

The evidence of ancient maps and deeds supports the trial court's findings of continuous uninterrupted adverse use. The holding is not clearly erroneous; therefore, we affirm the trial court's findings and rulings that Old Still Road was adversely used by the public for a continuous uninterrupted period of twenty years prior to January 1, 1968.

The plaintiffs next contend that RSA 229:1, which states that roads must "have been used as such for public travel . . . for 20 years prior to January 1, 1968," requires evidence of use from January 1, 1948, through January 1, 1968. We do not agree.

In 1967 the legislature amended the statute by adding the words "prior to January 1, 1968." This court is the final arbiter of the meaning of a statute, as expressed in the words of the statute itself. *Cross v. Brown*, 148 N.H. 485, 486 (2002). We interpret statutes not in isolation, but in the context of the overall statutory scheme. *Id.* Although we give undefined language its plain and ordinary meaning, we must keep in mind the intent of the legislation, which is determined by examining the construction of the

statute as a whole, and not simply by examining isolated words and phrases found therein. *Id.*

RSA chapter 229:1 delineates the requirements for public highways. In doing so, it obligates the town to maintain such roads, unless they are class VI highways. RSA 229:5 (Supp. 2002). Legislative history reveals the legislature's intent to relieve the towns of the burden of maintaining an excessive number of roads. When approving passage of the amendment, Senator Bradshaw stated, "Our existing statutes permit any road that is used for 20 years to become a public road and puts the town under the responsibility of maintaining same." N.H.S. JOUR. 458-59 (1967). The legislature added the words "prior to January 1, 1968" in order to change prospectively the creation of public highways by prescription. The legislature concurrently passed a bill redefining two specific roads so that they were no longer classified in such a way as to require the town's maintenance. *Id.* at 459-60.

■ It is apparent that the legislature sought to alleviate the responsibility of the towns for road maintenance by preventing the creation of new public roads by prescription after 1967. We conclude that the legislature added the language "prior to January 1, 1968" to allow any roads already acquired by prescription to stand, but restricted any further establishment of public highways by prescription. The legislature did not intend to redefine public roads that had already been acquired by prescription. If they wished to take away public rights to roads, they would have done so through additional bills. *See id.* Thus, continuous adverse public use of a road must have begun no later than January 1, 1948, in order to acquire public prescriptive rights. Our prior case law supports such a finding.

■ We have recognized that public roads may be established by prescription during a twenty-year period prior to 1948. *See Williams v. Babcock*, 116 N.H. at 824 (road existed by prescription before 1827); *Blake v. Hickey*, 93 N.H. 318 (1945); *Windham v. Jubinville*, 92 N.H. 102 (1942). Even if the public use ceased by 1948, so long as the public had already used the road continuously and uninterruptedly for a period of twenty years, a public highway by prescription may be established. In the instant case, the evidence supports a finding that Old Still Road was established as a public highway by prescription during either the 1800's or the early 1900's. This satisfies the requirements of RSA 229:1 for establishing a prescriptive public way. RSA 229:1 (Supp. 2002).

Next, the plaintiffs argue that damages were improperly awarded to defendant F & R as a result of the five-month delay caused by an

injunction. We agree with the trial court's decision to deny the plaintiffs' motion to dismiss F & R's damages claim and their motion for a directed verdict. F & R is entitled to damages; however, the trial court did not properly determine the amount. Therefore we vacate the award of damages and remand.

■■ A party subject to a wrongfully issued injunction is entitled to recover damages that were incurred or suffered as a result of the injunction. *See* SUPER. CT. R. 161(c), 163; *Real Estate Advisors v. Whittier Lifts*, 132 N.H. 638, 644-45 (1990). Thus, F & R may recover expenses that would not have been incurred in the absence of (*i.e.*, but for) the injunction itself. *Real Estate Advisors*, 132 N.H. at 644. One who claims damages has the burden of proof; he or she must, by a preponderance of the evidence, show that the damages sought were caused by the alleged wrongful act as well as the extent and amount of such damages. *Robert E. Tardiff, Inc. v. Twin Oaks Realty Trust*, 130 N.H. 673, 679 (1988). F & R is entitled to recover damages that are specifically attributable to the interruption of the logging operations on Old Still Road. F & R may not, however, recover all of its overhead expenses for its entire company during the five-month delay. The trial court erred in arbitrarily awarding the sum of one-half of one month of F & R's total expenses, minus expenses for cellular telephones and gasoline. F & R may recover damages for a reasonable time period during which it was necessary to re-organize its logging plans and re-assign its employees from the Old Still Road site. Such damages, however, must have been incurred only as a result of the delay, and may not be costs or expenses that F & R would have incurred regardless of the delay.

F & R may recover costs and expenses that were necessary and incurred in the exercise of ordinary care. F & R may not recover damages that could have been avoided through reasonable efforts or expenditures. *Flanagan v. Prudhomme*, 138 N.H. 561, 575 (1994). Consequential damages, including lost profits, must be reasonably foreseeable, ascertainable, and unavoidable. *Hydraform Prods. Corp. v. American Steel & Alum. Corp.*, 127 N.H. 187, 198 (1985). The trial court properly did not award F & R damages for the time period that it engaged in other work and its employees conducted other business to the benefit of F & R. On remand the trial court must determine what necessary costs and expenses were incurred during a reasonable time period while F & R adjusted its operations (including, but not limited to, re-assigning employees, beginning new projects, and moving equipment). Additionally, F & R is entitled to lost profits that may have resulted from a lower sale price of the timber.

■ Finally, we address the issue raised by F & R's cross-appeal challenging the trial court's denial of an award of attorney's fees. We affirm the trial court's decision. Each party to a lawsuit is responsible for his or her own attorney's fees. *White v. Francoeur*, 138 N.H. 307, 309 (1994). Fees may be awarded to the prevailing litigant only by statutory authorization, an agreement between the parties, or an established exception. *Id.* We have recognized an exception for those who are forced to litigate against an opponent whose position is patently unreasonable. *Id.* at 309-10. Because of the complicated facts and circumstances of this case, the trial court correctly found that the plaintiffs' position was not patently unreasonable; thus, the defendants are not entitled to an award of attorney's fees.

*Affirmed in part; vacated in part; and remanded.*

NADEAU and DUGGAN, JJ., concurred.