Strafford,
No. 5443.

ERNEST W. HEMON

*v.*

ROWE CHEVROLET CO. *& a.*

Argued December 6, 1966.
Decided February 24, 1967.

*Flynn, Powell & McGuirk* and *Raymond P. Blanchard* ( *Mr. Blanchard* orally ), for the plaintiff.

*Hartnett & Moher* ( *Mr. T. Casey Moher* orally ), for the defendants.

PER CURIAM. The master's report, containing his findings, rulings and decree which were approved by the Court, is as follows:

" The Master had a view of the premises.

" This is an action to restrain the defendants from entering upon a strip of land approximately ten feet wide, title to which is disputed by the parties; to assess damage for cutting of certain trees situated upon the disputed tract by the defendants; and to establish the boundary line between land of the respective parties.

" The burden of proof of establishing the trespass and the boundary line rests upon the plaintiff.

" The plaintiff and the defendant acquired title from a common ancestor, Elizabeth T. Keenan. The plaintiff's deed was dated April 4, 1936 and was recorded upon the same date. The deed to the plaintiff described the southeasterly corner of the premises as a determinable point and the frontage on Oak Street as running northwesterly from this point one hundred feet. The Master finds that the area in dispute does not fall within the deed's description of the premises.

" At the time the plaintiff negotiated for the purchase of his lot, the husband of Elizabeth T. Keenan showed the plaintiff and his wife a plan of the sub-division of the area. However, there was no reference in plaintiff's deed to any plan or to any specified lots. The plaintiff did not purchase or select specific lots. He was merely interested in buying a corner lot. He did, at the time of purchase, secure an oral option to purchase the land adjacent and westerly of the parcel conveyed to him.

" The Master finds and rules that the plaintiff did not acquire title to the disputed tract by virtue of his deed of conveyance or by virtue of any representations made to him at the time of purchase.

" The defendant, William H. Rowe, is a majority stockholder in the defendant company and up until 1962 was active in its management. For the purposes of this report, unless otherwise indicated, the use of the word 'defendant' refers both to Rowe and the Company.

" The defendant acquired title to his tract by deed dated April 2, 1946, the deed being recorded on March 3, 1947. The description

of the tract conveyed by this deed is inclusive of the disputed tract.

"As the plaintiff's deed did not include the disputed tract and the defendant's deed did include it, the plaintiff's title, if any, must rest upon some theory of adverse possession or color of title.

"At the time of the hearing, the plaintiff filed a motion to amend his pleading to include allegations of claim of title by virtue of possession under color of title or adverse use. The Master granted the motion on condition that the defendant should be allowed such time as he might desire to prepare an adequate defense.

"As the deed to the plaintiff did not give any semblance or appearance of having passed title of the disputed tract to the plaintiff, the Master finds that the plaintiff did not acquire title under any theory of color of title.

"The plaintiff did construct and use a walk from the rear of his premises over the disputed tract to Oak Street. This constituted an open and adverse use of a portion of the disputed tract. However, the evidence is quite clear that the use and walk were abandoned and did not continue for a period of twenty years. It follows, therefore, that such use does not lay the foundation for any claim of title under any theory of adverse use.

"This leaves the most difficult question in the case, that concerning the legal effect of the planting and maintaining of a row of spruce trees along the westerly side of the disputed tract. Sometime in 1937 the plaintiff planted a dozen or more trees on a line within the area now in dispute. Along part of the line the trees were planted some six feet or so apart, but the evidence does not indicate whether any trees were planted in the area of some thirty feet back from Oak Street. From the exhibits offered and from the views taken of the premises by the Master, it would appear that at most no more than two trees that survived were planted within this thirty some odd 'feet back from Oak Street. This is therefore not a case where the disputed area could be considered as having been entirely set off by a complete row or line of planted trees.

"While at the time when the alleged trespass was committed by the defendant, on August 15, 1962, the trees in question had grown to such a thickness that along the line where they stood they barred every access through them to the disputed area, the important indication to be considered is that which existed twenty

years previous on August 15, 1942, and continued to the time of the alleged trespass. There was, of course, no evidence offered as to the situation as it then existed. However, plaintiff's Exhibit No. 4 indicated the situation as it existed after the defendant had acquired his premises in 1946 and had at least begun construction of the building upon his lot. At that time the trees did not bar access to the disputed area.

" The Master finds that the trees planted by the plaintiff did not provide a complete or substantial enclosure of the disputed area for the statutory limitation period of twenty years.

" The trees planted by the plaintiff as they stood on August 15, 1942 or any date prior thereto was not such a 'flying of the flag' as would give open and notorious notice that the plaintiff claimed possession to the disputed strip.

" The Master finds and rules that the plaintiff never had title to the disputed strip by adverse possession. Inasmuch as he did not have title to the land, he did not have title to the trees planted thereon, and therefore an action of trespass does not lie against the defendant for having cut and removed the same.

" The Master finds and rules that the boundary line between the land of the plaintiff and that of the defendant is that as indicated in defendant's Exhibit B. Said line is more particularly described as beginning at an iron pipe set in the ground on the northerly side of Oak Street at a point one hundred seventy-eight feet ( 178' ) westerly of Central Avenue, thence running North 38° 48' East for a distance of one hundred feet ( 100' ) to an iron pipe set in the ground.

" *Conclusion*: The Master recommends:

" 1. That the plaintiff's petition for an injunction restraining the defendant from entering on the premises, for an order that the defendant restore the premises to their condition prior to the cutting of the trees and for damages, be dismissed.

" 2. That the boundary line between the premises of the parties be fixed as a line beginning at an iron pipe set in the ground on the northerly side of Oak Street, one hundred seventy-eight feet ( 178' ) westerly of Central Avenue, thence running North 38° 48' East for a distance of one hundred feet ( 100' ) to an iron pipe set in the ground. "

The two tracts owned by the parties are situated on the northwesterly side of Oak Street, between Central Avenue on the west, which forms the westerly boundary of the defendants' land,

and Park Street extension on the east, which forms the easterly boundary of the plaintiff's land. The aggregate frontage on Oak Street, between Central Avenue and Park Street extension, is 278 feet. The disputed ten-foot strip extends northeasterly from Oak Street for a distance of one hundred feet, and is approximately at right angles to it. The sidelines of this strip, at Oak Street are 168 and 178 feet, respectively, from Central Avenue.

The deed under which the plaintiff acquired title, from Elizabeth T. Keenan, dated April 4, 1936, contains the following description:

"A certain tract of land situate in said Dover on the northeasterly side of Oak Street, bounded and described: . . .

"Beginning at an iron hub set in the ground on the northeasterly side of said street at a point 238 feet southeasterly from the easterly sideline of Central Avenue and running thence northeasterly by other land of the grantor 100 feet to an iron hub set in the ground; thence running about easterly by other land of the grantor 60 feet to an iron hub on the westerly sideline of a proposed street which would be an extension of Park Street and running thence southwesterly by said proposed Street 126 feet more or less to an iron hub at Oak Street; thence running northwesterly by said Oak Street 100 feet to the point of beginning."

The deed from the common grantor, Mrs. Keenan, to the defendant Rowe Chevrolet Co., dated April 2, 1946, is as follows:

". . . A certain lot or parcel of land situated on the southeasterly side of Central Ave. at the corner of Oak St. in said Dover, and bounded and described as follows: Beginning at a drill hole on Central Ave. at the northeasterly corner of the land herein conveyed and running South 73 degrees 33 minutes east 178 feet, more or less by land of the grantor to a stake; thence turning and running S9° 00' W 91.85 feet more or less, to land of the grantor to a stake at land of Hemon; thence turning and running S39° 00' W 100 feet, more or less, to a stake at said Oak St.; thence turning and running N51° 00' W 178 feet more or less along Oak St. to a stake at the corner of Oak St., and Central Ave.; thence turning and running N22° 23' E 125 feet more or less along Central Ave. to said drill hole and place of beginning; Said parcel of land being lot 15 on plan of Elizabeth Keenan, H. G. Hersey, C. E. dated March 23, 1945 to which

plan and survey reference| is hereby made for a more particular description. "

The parties agree that the southwesterly corner of the Hemon premises is not 238 feet easterly from the easterly side of Central Avenue, as the deed to the plaintiff erroneously states. The expert testimony for both parties was that this corner was approximately 178 feet from Central Avenue. The defendants' expert Davis, whose testimony coincided to a substantial degree with that of the plaintiff's expert Durgin, testified that his survey, based upon an examination of the deeds, the area and the location of landmarks, including certain iron pipes driven into the ground, enabled him to locate definitely the boundaries of the plaintiff's and defendants' lots. He stated that "in conformity" with the deeds, all of the trees which the defendants cut were on their own land. An examination of the instruments and the testimony convinces us that while the final interpretation of the deeds is for this court ( *Pettee* v. *Chapter*, 86 N. H. 419; *Aldrich* v. *Beauregard & Sons*, 105 N. H. 330, 336 ), the master's conclusion that the defendants took the disputed area under their deed and that the plaintiff acquired no title or color of title to it by his deed, was fully warranted by the record.

The plaintiff's argument that, due to the single erroneous distance of 238 feet specified in his deed, it is impossible to fix the boundaries by the deeds, is rejected. *Wadleigh* v. *Cline*, 99 N. H. 202; *Johnson* v. *Simpson*, 36 N. H. 91.

If the plaintiff has any claim of title to the disputed area where the trees were located, it must rest upon his claim of title by adverse possession. The walk which he built, as set forth in the master's report, was sustainably found to have been abandoned a substantial time before the twenty-year period had run. It was therefore correctly ruled that it furnished no basis for a claim of title.

A final question arises as to whether the existence of the row of spruces set out by the plaintiff gave him title by adverse possession. The record, including photographs, shows that |as late as 1946, when the defendants had begun construction of the building on their land, the trees neither barred their access to the controversial area nor as the master found, constituted "open and notorious notice" to the defendants that the plaintiff claimed the disputed strip. It would be a matter of common knowledge that four years earlier, on August 15, 1942, twenty years before

the defendants cut the trees on August 15, 1962, the spruces would have been substantially smaller and even less of a barrier to the defendants' access to the area on which they were planted, and even less of a warning to the defendants that the plaintiff was claiming the land. There was evidence that after 1946 the defendants made use of the disputed land, plowed snow against and beneath the trees under a claim of right to do so, and that they bulldozed out the flagstone walk in 1946. On the conflicting testimony, the trier of facts was at liberty to accept or reject such portions of the evidence as he found credible. *Clover &c. Co.* v. *Smith Co.*, 96 N. H. 491, 493. We cannot say that the master's conclusion that the plaintiff failed to sustain his burden of proving open, adverse, exclusive and notorious use under a claim of right for a period of twenty years is without support in the record. *Hampton* v. *Palmer*, 102 N. H. 127; *Goodwin* v. *Johnson*, 105 N. H. 294. The plaintiff's exceptions to the findings and rulings on this issue are overruled. *Hines* v. *Donovan*, 101 N. H. 239.

The decree fixing the boundaries in accordance with the testimony and plan submitted by the defendants, and denying the plaintiff damages for the trees which were cut, must be upheld, and the order is

*Exceptions overruled.*