Hillsborough-southern judicial district
No. 2005-669

## BLAGBROUGH FAMILY REALTY TRUST

v.

## A & T FOREST PRODUCTS, INC. & *a.*

Argued: November 8, 2006
Opinion Issued: February 28, 2007

30

*Cleveland, Waters and Bass, P.A.*, of Concord (*William B. Pribis* on the brief and orally), for the plaintiff.

*Wiggin & Nourie, P.A.*, of Manchester (*Patricia M. Panciocco* and *Gregory E. Michael* on the brief, and *Mr. Michael* orally), for defendant A & T Forest Products, Inc.

*Fernald, Taft, Falby & Little, P.A.*, of Peterborough (*Silas Little* on the brief and orally), for defendant Town of Wilton.

DUGGAN, J. The plaintiff, Blagbrough Family Realty Trust (Blagbrough), and defendant A & T Forest Products (A & T) cross-appeal an opinion and order of the Trial Court (*Lynn*, C.J.), on two consolidated cases: (1) an appeal from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Wilton (Town) granting a building permit to A & T; and (2) a petition to quiet title. We affirm in part, reverse in part, and remand.

*I. Background*

Litigation involving the parties and the land here at issue was the subject of two previous opinions of this court. *See Blagbrough Family Realty Trust v. Town of Wilton*, 153 N.H. 234 (2006); *Blagbrough v. Town of Wilton*, 145 N.H. 118 (2000). Here we recite the facts pertinent to this appeal as found by the trial court.

Blagbrough owns real property located at 293 Burton Highway in Wilton, which is identified on the Town's tax map as Lot A-22. A & T owns an adjoining parcel, identified on the Town's tax map as Lot A-21, and had obtained approval to subdivide it into two lots: Lots A-21-1 and A-21-2. Both Lot A-22 and Lot A-21 are bounded to the north by Old Peterborough Road and were at one time under the common ownership of John and Anne Dimeling. A & T also owns another parcel identified as Lot A-30, which is situated north of Old Peterborough Road.

A & T acquired Lots A-21 and A-30 on February 20, 2001, by warranty deed from heirs of the Dimelings. Blagbrough acquired Lot A-22 from the Dimelings by warranty deed dated September 16, 1963. The deed for the Blagbrough parcel contains a typed paragraph indicating that the conveyance included a canal easement with certain flowage rights therein. However, a line was drawn through the canal easement paragraph and a handwritten notation was inserted. It reads, "Above paragraph deleted— pertinent to land retained by Dimelings." The deed also grants Blagbrough an easement to use and access a well located on land which was, at the time, retained by the Dimelings (now Lot A-21-1). The well provided water for the house on the Blagbrough's parcel, but the trial

court found that the well has not been used as a source of drinking water since 1985.

On September 29, 2003, the Town's board of selectmen (the selectmen) voted to authorize a building permit for A & T to construct a single family home on Lot A-30. Blagbrough appealed the selectmen's decision to the ZBA. The ZBA upheld the selectmen's decision and later denied Blagbrough's motion for rehearing. Blagbrough then appealed to the superior court.

Blagbrough also brought a petition to quiet title in superior court, seeking a declaration that it: (1) had acquired a portion of Lot A-21-1 through adverse possession; (2) had certain rights to the canal easement (described above); (3) had acquired a portion of Old Peterborough Road through adverse possession; and (4) was entitled to damages for interference with the well and canal easements that allegedly occurred when A & T removed timber and hauled it across Lot A-21-1. In response to a motion filed by Blagbrough, the ZBA appeal was consolidated with the quiet title petition, and both matters became the subject of a two-day bench trial and a subsequent hearing on damages.

When all was said and done, the trial court ruled that: (1) Blagbrough had acquired a portion of Lot A-21-1 by adverse possession; (2) Blagbrough had certain rights in the canal easement; (3) Blagbrough had not acquired any portion of Old Peterborough Road through adverse possession; (4) the decision of the ZBA was neither unlawful nor unreasonable; (5) A & T was required to replace a portion of the pipe running from the well on Lot A-21 to the Blagbrough property; and (6) A & T was required to repair some damage to the canal. Blagbrough then appealed and A & T cross-appealed, placing these rulings in dispute.

## II. Adverse Possession: Lot A-21-1

The trial court found that, according to the pertinent deeds, the boundary between Lots A-22 and A-21-1 is "a straight course running between two granite bounds, one located on the northern side of the Burton Highway and the other located on the southern side of the so-called 'Old Peterborough Road.'" Neither side challenges this finding. Accordingly, we assume its correctness and use it as a reference point for our consideration of Blagbrough's adverse possession claim.

The foundation of a small boathouse is slightly to the west of the boundary line. Crediting the testimony of Corinne Blagbrough, Kenton Blagbrough (Corinne Blagbrough's son), and Howard Preston, the trial court found that the Blagbrough family engaged in activities in an area immediately around the boathouse and that these activities were sufficient to satisfy the criteria for adverse possession. However, the trial court also

ruled that the extent to which the Blagbroughs engaged in activity on land to the west of the boathouse was unclear and could not satisfy the criteria for adverse possession. It therefore concluded that Blagbrough had acquired title by adverse possession to a portion of Lot A-21-1 which was east (*i.e.*, in the direction of Lot A-22) of the western-most point of the boathouse.

On appeal, Blagbrough argues that the trial court's ruling is inconsistent with the evidence because the evidence demonstrated that Blagbrough acquired title by adverse possession to a significantly broader swath of Lot A-21-1, extending all the way to a stone wall located approximately 150 feet west of the boathouse. A & T cross-appeals, arguing that the evidence does not support a conclusion that Blagbrough acquired title by adverse possession to any portion of Lot A-21-1.

We review a trial court's application of law to facts *de novo*. *Tech-Built 153 v. Va. Surety Co.*, 153 N.H. 371, 373 (2006). We accord deference to a trial court's findings of historical fact, where those findings are supported by evidence in the record. *Elwood v. Bolte*, 119 N.H. 508, 510 (1979).

In order to obtain title by adverse possession, the adverse possessor must prove, by a balance of probabilities, twenty years of adverse, continuous, and uninterrupted use of the land claimed so as to give notice to the owner that an adverse claim is being made. *Flanagan v. Prudhomme*, 138 N.H. 561, 571-72 (1994). In addition, adverse use is trespassory in nature, and the adverse possessor's use of the land must be exclusive. *See Kellison v. McIsaac*, 131 N.H. 675, 679 (1989); *Seward v. Loranger*, 130 N.H. 570, 576-77 (1988). The success or failure of a party claiming adverse possession is not determined by the subjective intent or the motives of the adverse possessor. *Kellison*, 131 N.H. at 680. Rather the acts of the adverse possessor's entry onto and possession of the land should, regardless of the basis of the occupancy, alert the true owner of the cause of action. *Id.* In evaluating the merits of an adverse possession claim, courts are to construe "[e]vidence of adverse possession of land ... strictly." *Bellows v. Jewell*, 60 N.H. 420, 422 (1880) (citations omitted).

The trial court found that members of the Blagbrough family: (1) tore down the boathouse in approximately 1964 or 1965 because it was dilapidated; (2) routinely entered the parcel for walks and other recreational activities; (3) permitted their children to play on the parcel; (4) used the parcel as a source of Christmas trees; and (5) cut grass, removed trees, and planted some flowers on the parcel. Accordingly, the question here is whether these activities are sufficient to support a conclusion that Blagbrough obtained title by adverse possession to a portion of Lot A-21-1. We hold that they are not.

■ The law requires more than occasional, trespassory maintenance in order to perfect adverse title; the use must be sufficiently notorious to justify a presumption that the owner was notified of it. *Pease v. Whitney*, 78 N.H. 201, 204 (1916). The act of tearing down the boathouse, although not insignificant, was a one-time occurrence that the trial court found took place one or two years after the Blagbroughs acquired the parcel. That act, alone, therefore cannot be considered more than an occasional trespass. *See id.* Apparently recognizing this point, both the trial court and the parties properly focused more upon the Blagbroughs' other activities on the subject parcel in considering the adverse possession claim. With respect to these activities, although testimony did indicate that the Blagbrough family engaged in some of them "routinely," those activities are not sufficiently notorious or exclusive to satisfy the criteria for adverse possession. *Compare Alukonis v. Kashulines*, 97 N.H. 298, 299 (1952) (stating that forty years of continuous *and* uninterrupted use of disputed strip to cut hay, garden, and grow crops, combined with fact that strip visually blended in with possessor's lot due to rudimentary boundary monuments in his favor, constituted adverse possession), *with Flanagan*, 138 N.H. at 572 (noting occasional playing of children on tract constituted minimal use not exclusive or sufficiently adverse); *Hemon v. Rowe Chevrolet Co.*, 108 N.H. 11, 16-17 (1967) (stating that plaintiff's setting off disputed boundary strip with row of spruce trees, which grew from small to large over the twenty-year prescriptive period, was not open and notorious use giving notice of adverse claim); *Cushing v. Miller*, 62 N.H. 517, 525 (1883) (stating that occasional cutting of timber on wild lot not sufficiently adverse), *overruled on other grounds by Dame v. Fernald*, 86 N.H. 468, 471 (1934). Accordingly, even accepting the facts as found by the trial court, we conclude that Blagbrough has not met its burden of establishing that it acquired title to any portion of Lot A-21-1 by adverse possession. The trial court's conclusion to the contrary is therefore reversed.

*III. The Canal Easement*

■ As described above, a portion of the deed from the Dimelings to Blagbrough conveyed a canal easement, granting rights in a canal that traversed Lots A-21 and A-22. Some of the language concerning the canal easement—particularly the flowage rights therein—had been crossed out. The trial court ruled that this "removal of the so-called canal easement language [from the deed conveying Lot A-22 from the Dimelings to Blagbrough] was a mistake and does not have the effect of extinguishing Blagbrough's right to flow, use and maintain the portion of the canal located on the Blagbrough property." On appeal, A & T argues that: (1)

removal of the canal easement language from the deed was not a mistake; and (2) easement rights in the old canal merged under the common ownership of the Dimelings, and cannot spring back.

 With respect to the first argument, we have held that "[a] plain error in a deed will be rejected and the deed construed reasonably to conform to the intent of the parties." *Reney v. Hebert*, 109 N.H. 74, 75 (1968). The trial court found that "there is no dispute that a portion of the canal lays within the Blagbrough property." The trial court then held that since "the Dimelings actually did include a portion of the canal in their grant to Blagbrough, the crossed-out and penned-in language contained in the deed cannot be construed as reflective of an intent not to convey a portion of the canal easement to Blagbrough." We agree.

As the trial court reasoned, the most "sensible construction [of the deed] is that the deletion of the easement was based on the grantors' erroneous belief that the property conveyed to Blagbrough did not include any portion of the canal." After all, the crossed-out language of the deed pertains to flowage rights in the canal and the handwritten portion evinces a belief that no portion of the canal had been transferred. It follows that if the Dimelings had realized that they were still conveying a portion of the canal to Blagbrough, they would have retained specific language in the deed pertaining to the use of, or flowage rights related to, the portion of the canal that was conveyed. No such language appears in the deed. Accordingly, we reject A & T's first argument.

As its fallback position, A & T contends that the canal easement was extinguished by operation of the doctrine of merger. Our rules affirmatively require the moving party to demonstrate where each question presented on appeal was raised below. *See* SUP. CT. R. 16(3)(b); *Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004). A & T has pointed to no part of the record indicating that it raised its merger argument before the trial court and we find no specific reference to merger in the transcript. *See* SUP. CT. R. 16(3)(d) (moving party's brief shall contain statement of facts material to consideration of questions presented "with appropriate references to the appendix or to the record"); SUP. CT. R. 13(2) ("The moving party shall be responsible for ensuring that all or such portions of the record relevant and necessary for the court to decide the questions of law presented by the case are in fact provided to the supreme court."). Nor did the trial court discuss the merger argument in its decision. Where a party fails to demonstrate that it raised an issue before the trial court, the issue is not preserved for our review. *Bean*, 151 N.H. at 250; *see also Broughton v. Proulx*, 152 N.H. 549, 555 (2005). Accordingly, we will not address the merger issue for the first time on appeal.

*IV. Adverse Possession: Old Peterborough Road*

Blagbrough asserts that it has acquired title by adverse possession to a portion of Old Peterborough Road which abuts the northern boundary of Lot A-22. The trial court rejected this argument, concluding that: (1) Old Peterborough Road was a public highway; (2) Blagbrough had failed to establish that Old Peterborough Road had been discontinued; and (3) therefore Blagbrough could not acquire any rights in it by adverse possession. We agree with the trial court.

*A. Establishment of Public Highway*

Pursuant to RSA 229:1 (1993), a public road could be created by prescription if it had "been used . . . for public travel . . . for 20 years prior to January 1, 1968 . . . ." *See Mahoney v. Town of Canterbury*, 150 N.H. 148, 150 (2003). Whether a highway is created by prescription is a finding of fact. *Id.* Findings of fact by a trial court are binding upon us unless they are not supported by the evidence or are erroneous as a matter of law. *Id.*

■ Here, the trial court found that Old Peterborough Road, sometimes called Old County Road or Stiles Road, had been used for public travel since at least the early 1800s. In support of this finding, the trial court noted that Old Peterborough Road was: (1) referenced on the Wilton Town Plan of 1805; (2) included in the Carrigain Map of 1816; and (3) referenced in the layout petition for the Burton Highway filed with the Court of Common Pleas in 1840. We have held, based upon a different road's inclusion in the same Carrigain map, that "the inclusion of a road on a map is competent evidence to support the inference of use of the road . . . ." *Williams v. Babcock*, 116 N.H. 819, 822 (1976). Moreover, during a view, the trial court observed stone walls lining both sides of Old Peterborough Road. Where a wall has been erected on either or both sides of a road, its "evidentiary value is important." *Hoban v. Bucklin*, 88 N.H. 73, 80 (1936). Further, the trial court expressly found that Blagbrough had not come forward with any evidence that use of the road was permissive. *See Mahoney*, 150 N.H. at 151. In *Mahoney*, we held that similar evidence supported a finding that a public highway by prescription had been established under RSA 229:1. *Id.* at 151-52. Similarly, here we uphold the trial court's determination that Old Peterborough Road was a public highway.

*B. Discontinuance*

Blagbrough argues that even if Old Peterborough Road was established as a public highway, it was discontinued. Once it is shown that a road is a public highway, the highway is presumed to exist until it is discontinued,

and discontinuance is not favored in the law. *Davenhall v. Cameron,* 116 N.H. 695, 696-97 (1976). "Discontinuance is a fact that must be proved and the burden is upon the party who asserts discontinuance to prove it by clear and satisfactory evidence. Because public roads are discontinued by town vote, and such actions are recorded . . . , the best evidence of discontinuance is the official record." *Id.* (citations omitted); *see also* RSA 231:43 (Supp. 2006) (discussing discontinuance).

Blagbrough advances several arguments for discontinuance in its brief. First, citing *State v. Canterbury,* 40 N.H. 307, 312-13 (1860), Blagbrough argues:

> The Burton Highway Petition did reference the Old Peterborough Road. However, the Petition spoke of laying out a road (the Burton Highway) to "the Old Road" *but then in an entirely different direction.* Thus, although it references Old Peterborough Road, the Burton Highway Petition did not have the effect of confirming its existence. Instead, it had the effect of discontinuing Old Peterborough Road.

(Citations omitted.) The trial court rejected Blagbrough's argument "that the road depicted or referenced in the various maps and other documents introduced by A & T and the Town is some road or roads other than the same Old Peterborough Road described in the Blagbrough deed and the drawing recorded with that deed in the registry."

We find Blagbrough's argument unavailing. The Burton Highway Petition describes the layout of the Burton Highway as running past markers such as sticks, stones, stakes, birch trees, unidentified types of trees, and beech trees, among many other types of markers. Blagbrough has not directed us to any exhibit admitted by the trial court that clearly delineates all of these markers and supports its position. Indeed, in the exhibits admitted by the trial court and provided to us in connection with this appeal, we find no maps that identify these particular trees, stones, and stakes. While a Burton Highway layout plan is contained in A & T's appendix, Blagbrough does not rely upon it in its brief as a point of reference for its argument. Without such maps, which Blagbrough (as the party appealing this issue) was responsible for providing us, *see* SUP. CT. R. 13(2), 16(3)(d), we have no way of evaluating the precise trajectory of the Burton Highway or the implications of that trajectory on Old Peterborough Road. Furthermore, the Burton Highway Petition describes a layout of the Burton Highway—it does not describe a layout of the Old Peterborough Road. Therefore, and given the strong presumption against discontinuance, we find the Burton Highway Petition's vague references to

Old Peterborough Road, without more, do not compel a finding that Old Peterborough Road was discontinued.

■ Blagbrough also argues that the trial court erred in concluding that discontinuance had not been established because it did not give enough weight to: (1) the testimony of Kenton Blagbrough; (2) the testimony of the Town's former road agent; and (3) certain maps offered into evidence which supported its position.

> The resolution of conflicts in the evidence and determination of issues of fact are functions of the trier of fact. Because the proper standard of review with respect to the weight of evidence is not whether this court would have found differently but whether a reasonable person could find as did the trial court, we will not disturb the decision of the finder of fact unless it is clearly erroneous. The trial court, acting as the finder of fact, is not required to explain away all inconsistencies in the evidence presented at trial.

*Barrows v. Boles*, 141 N.H. 382, 396-97 (1996) (brackets, citations, and quotations omitted); *see also Rancourt v. Town of Barnstead*, 129 N.H. 45, 50 (1986) ("The credibility and weight to be given to a witness' testimony is a question of fact for the trial court. If the findings can reasonably be made on all the evidence, they must stand."). Our review of the record reflects that the trial court's factual determinations are adequately supported by the testimony and other evidence presented at trial. Further, in light of the strong presumption against discontinuance, the fact that some maps may have been inconsistent with others in their labeling of Old Peterborough Road is not dispositive.

## C. Adverse Possession vis-à-vis a Public Highway

■ One cannot acquire rights in a public highway by adverse possession. RSA 236:30 (1993). We have upheld the trial court's determinations that: (1) Old Peterborough Road is a public highway, within the meaning of RSA 229:1; and (2) it was not established that Old Peterborough Road had been discontinued. Accordingly, even assuming *arguendo* that Blagbrough had successfully established the elements of adverse possession, its claim vis-à-vis Old Peterborough Road fails.

## V. The ZBA Ruling

The ZBA ruling at issue relates to Lot A-30, a 12.8-acre parcel located north of the Blagbrough property and bounded on the south by Old Peterborough Road. On September 29, 2003, the Town's selectmen, after

review and comment by the planning board and town counsel, voted to authorize a building permit pursuant to RSA 674:41, I(c) (Supp. 2002) (amended 2004) for A & T to engage in construction on Lot A-30. Blagbrough appealed the selectmen's decision to the ZBA, which agreed with the selectmen. Blagbrough then appealed the ZBA's decision to the superior court, which affirmed the ZBA.

Here, Blagbrough argues that the trial court erred by: (1) making certain pretrial rulings relating to a protective order sought by the Town; (2) concluding that Old Peterborough Road is a public highway; (3) ruling that Lot A-30 was grandfathered within the meaning of the zoning ordinance; and (4) misinterpreting RSA 674:41, I(c). We consider each argument in turn.

Our review of zoning board decisions is limited. *Harrington v. Town of Warner*, 152 N.H. 74, 77 (2005). We will uphold the trial court's decision unless the evidence does not support it or it is legally erroneous. *Chester Rod & Gun Club v. Town of Chester*, 152 N.H. 577, 580 (2005). For its part, the trial court must treat all factual findings of the ZBA as *prima facie* lawful and reasonable. RSA 677:6 (1996). It may set aside a ZBA decision if it finds by the balance of probabilities, based upon the evidence before it, that the ZBA's decision was unreasonable. *Town of Chester*, 152 N.H. at 580.

### A. The Protective Order and Related Issues

We begin by placing Blagbrough's challenge to the trial court's pretrial rulings in context. On June 2, 2004, Blagbrough moved to consolidate the petition to quiet title and the ZBA appeal, arguing, among other things, that "the issues and evidence presented [in both cases] . . . are likely to be duplicative . . . ." On July 8, 2004, the Trial Court (*Hicks*, J.) granted the motion to consolidate. Later, on or about September 15, 2004, Blagbrough propounded interrogatories to the Town, seeking discoverable information related to the ZBA appeal. In response, the Town moved for a protective order, arguing that the superior court should rule on issues connected to the ZBA appeal based only upon information contained in the certified record of the ZBA proceedings, and therefore further discovery on the ZBA matter was not necessary. The Trial Court (*Lynn*, C.J.) granted the Town's motion. At trial, the court permitted counsel for the Town to cross-examine witnesses and to introduce or rely upon evidence not found in the certified record of the ZBA proceedings. On appeal, Blagbrough argues that "once the Trial Court disallowed any discovery on the plaintiff's RSA 677:4 appeal, it was bound to prohibit the Town from participating substantively in the evidentiary aspects of the December 21 and 22, 2004 hearing in this matter."

■ The trial court has broad discretion in managing and supervising pretrial discovery and in ruling on the conduct of a trial. *Murray v. Developmental Servs. of Sullivan County*, 149 N.H. 264, 268 (2003). We review a trial court's rulings on the management of discovery and the scope of cross-examination under an unsustainable exercise of discretion standard. *See State v. Barnes*, 150 N.H. 715, 719 (2004) (discovery); *State v. Wellington*, 150 N.H. 782, 788 (2004) (cross-examination). To establish that the trial court erred under this standard, the plaintiff must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of its case. *See id.*

■ Especially since it was Blagbrough that sought to consolidate these two cases, we do not find that the trial court's rulings were untenable or unreasonable to the prejudice of Blagbrough's case. It is within the trial court's discretion to allow further evidence in a ZBA appeal. *Peter Christian's v. Town of Hanover*, 132 N.H. 677, 683 (1990). In granting the Town's motion for a protective order, the trial court apparently concluded that it understood the materials upon which the ZBA relied and that further evidence would not aid in its decision or be necessary to complete the record; therefore, additional discovery on issues pertaining to the ZBA appeal would not be necessary. *See Estabrooks v. Town of Jefferson*, 134 N.H. 367, 369 (1991) (explaining the admission of additional evidence by the superior court in a ZBA appeal). Later, at trial, when Blagbrough elicited testimony from witnesses concerning issues germane to the ZBA appeal, the Town was entitled to cross-examine those witnesses through questioning and the use of exhibits. *Appeal of Sutton*, 141 N.H. 348, 351 (1996) ("In any proceeding, cross-examination, almost by definition, is a review of direct examination in order to determine the veracity, accuracy and depth of knowledge of the witness." (quotation omitted)). To hold otherwise would result in one litigant being able to embark on a wide-ranging evidentiary inquiry, while the other (who opposed consolidation presumably to avoid precisely the type of predicament at issue here) is forced to stand by silently. Accordingly, we reject Blagbrough's first assignment of error on the ZBA appeal.

*B. Old Peterborough Road*

Blagbrough's second argument is that the trial court erred in concluding that Old Peterborough Road is a public highway. For the reasons articulated earlier in this opinion, we reject this argument.

## C. Grandfathering of Lot A-30

Lot A-30 is located in an area of the Town zoned as a watershed district. Section 14.3.2 of the Wilton Zoning Ordinance requires each lot in the Watershed District to have a minimum of 300 feet of frontage on a class V or better road. It is undisputed that Lot A-30 does not have 300 feet of frontage. In affirming the selectmen's decision to grant the building permit, the ZBA concluded, and the trial court agreed, that section 17.2 of the ordinance excused A & T from having to comply with section 14.3.2. Blagbrough contends that both the ZBA and the trial court misinterpreted section 17.2 and that therefore, absent a variance, A & T could not obtain a building permit on a lot that did not satisfy the ordinance's frontage requirements.

The interpretation of a zoning ordinance is a question of law, which we review *de novo. Town of Warner,* 152 N.H. at 79. Because the traditional rules of statutory construction generally govern our review, we construe the words and phrases of an ordinance according to the common and approved usage of the language. *Id.* When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent. *Id.* Moreover, we will not guess what the drafters of the ordinance might have intended, or add words that they did not see fit to include. *Id.*

Section 17.2 of the ordinance provides in pertinent part:

> [A] lot of record at the time of the effective date of this Ordinance [which] has less area and/or frontage than herein required in the District in which it is located . . . may be used for a single family dwelling if permitted in that district subject to New Hampshire water supply and pollution control division approval and subject to all district regulations applicable to lots within the district wherein the lot is located with the exception of lot size and/or frontage.

In order for section 17.2 to apply, the subject lot must be a "lot of record" at the time of the effective date of the ordinance. Section 3.1.19 of the ordinance defines a "lot of record" as "[l]and designated as a separate and distinct parcel in a legally-recorded deed filed in the record of Hillsborough County, New Hampshire." While acknowledging that Lot A-30 and Lot A-21 had been in common ownership under the Dimelings, the trial court ruled that Lot A-30 was a "lot of record" within the meaning of section 17.2 because Lot A-30 was located on the opposite side of Old Peterborough Road from Lot A-21 and had been described separately from Lot A-21 in the deeds in the Dimeling chain.

Blagbrough contends that Lot A-30 does not satisfy the definition of "lot of record" both because there was no separate deed for Lot A-30 at the time of the Dimelings' ownership and because a requirement that the lot be "buildable" should be read into the definition of "lot of record." Blagbrough also argues that the "Ordinance should not be interpreted to allow development in the Watershed District with *no* frontage whatsoever and the Trial Court erred when it allowed such interpretation." We find these arguments unavailing.

First, the plain language of section 3.1.19 does not require a "lot of record" to be described in a separate deed. Rather, it simply requires that within any deed conveying the lot, the lot must be described separately. The trial court found that such a separate description was contained in the deeds in the Dimeling chain, and Blagbrough has pointed to no persuasive evidence which would undermine this finding.

Second, the word "buildable" does not appear anywhere in the definition of "lot of record." We will not guess what the drafters of the ordinance might have intended, or add words that they did not see fit to include. *Town of Warner*, 152 N.H. at 79.

Third, we decline Blagbrough's invitation to hold that a lot with no frontage somehow materially differs from a lot with little frontage for purposes of section 17.2. The plain language of the ordinance applies anytime a lot has "less" frontage. Lot A-30 has less frontage than is required (it has none). Accordingly, section 17.2 applies and we reject Blagbrough's arguments concerning the trial court's interpretation of the ordinance. If the Town wishes to change the words or terms of its ordinance, it is of course free to do so.

### D. RSA 674:41, I(c)

Blagbrough's final assignment of error pertaining to the ZBA appeal is that both the ZBA and the trial court misinterpreted RSA 674:41, I(c). Blagbrough contends that RSA 674:41, I(c) does not authorize selectmen to issue building permits to individual landowners.

RSA 674:41, I(c) provides, in pertinent part:

> [N]o building shall be erected on any lot within any part of the municipality nor shall a building permit be issued for the erection of a building unless the street giving access to the lot upon which such building is proposed to be placed:
>
> . . .
>
> (c) Is a class VI highway, provided that:

(1) The local governing body after review and comment by the planning board has voted to authorize the issuance of building permits for the erection of buildings on said class VI highway or a portion thereof; and

(2) The municipality neither assumes responsibility for maintenance of said class VI highway nor liability for any damages resulting from the use thereof; and

(3) Prior to the issuance of a building permit, the applicant shall produce evidence that notice of the limits of municipal responsibility and liability has been recorded in the county registry of deeds . . . .

In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *Appeal of Town of Bethlehem*, 154 N.H. 314, 319 (2006). When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add words that the legislature did not include. *Id.*

 We agree with the trial court's reasoning that there is

no merit in Blagbrough's suggestion that RSA 674:41, I(c) does not permit the local governing body to grant building permits on an individual, case by case basis, for properties that fall within the purview of the statute. The mere fact that the statute uses the plural terms "permits" and "buildings" does not compel the conclusion that the selectmen must grant such approval en gross, i.e., either on a road-wide or municipality-wide basis. On the contrary, the statute specifically indicates that approvals can be granted "for *said* class VI highway or *a* portion thereof." (Emphasis added.) These terms support the view that the statute contemplates a case by case determination by the selectmen as to whether to grant approval for building on a particular lot or lots.

Blagbrough disputes the trial court's reasoning by citing RSA 674:41, II, which provides:

Whenever the enforcement of the provisions of this section would entail practical difficulty or unnecessary hardship, and when the circumstances of the case do not require the building, structure or part thereof to be related to existing or proposed streets, the applicant for such permit may appeal from the decision of the

administrative officer having charge of the issuance of permits to the zoning board of adjustment in any municipality which has adopted zoning regulations . . . .

Blagbrough argues that RSA 674:41, II requires individual lot owners to seek building permits from the local zoning board of adjustment.

We do not construe statutes in isolation; instead, we attempt to do so in harmony with the overall statutory scheme. *Soraghan v. Mt. Cranmore Ski Resort*, 152 N.H. 399, 405 (2005). When interpreting two statutes that deal with a similar subject matter, we construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statutes. *Id.*

RSA 674:41, II provides a method for an applicant suffering from practical difficulty or unnecessary hardship—the conditions needed to trigger that provision—to appeal a decision of a local administrative officer. RSA 674:41, I(c) does not conflict with RSA 674:41, II. Rather, it simply sets forth the procedure to be followed by those applicants who cannot, choose not, or need not, demonstrate a practical difficulty or unnecessary hardship. Accordingly, discerning no error, we uphold the trial court's interpretation of the statutory scheme.

## VI. Damages

Blagbrough's final two arguments are that the trial court erred in: (1) ruling that A & T was not required to comply with RSA 231:40-:42 when it placed a timber road over Lot A-21-1; and (2) fashioning the remedy for damage caused to its well easement. We first provide some factual background, and then analyze Blagbrough's contentions.

The well easement is described earlier in this opinion. It contains an approximately 900-foot water line that runs from the well head on A & T's property to the residence on Blagbrough's property. The trial court credited the testimony of Alan Stevens, the principal of A & T, that this water line was broken accidentally because it was entangled in the roots of a tree that was removed during the construction of a road across Lot A-21. The road across Lot A-21 was constructed to facilitate tree removal and to provide access to Lots A-21-1, A-21-2 and A-30.

### A. RSA 231:40-:42

Blagbrough argues that RSA 231:40-:42 (1993) required A & T to petition the selectmen before it created a right-of-way to remove timber via the road. In short, Blagbrough's position seems to be that the well easement operated to give it standing to privately enforce the provisions of RSA 231:40-:42. The trial court ruled that the requirements of RSA

231:40-:42 were not triggered because those statutes "cannot be read to require defendant to obtain a right-of-way from the selectmen to remove timber from his own land merely because plaintiff may have an easement to obtain well water from defendant's property."

RSA 231:40 provides:

> Upon petition, when it becomes necessary for the convenient removal of lumber, wood or other material, to pass through the lands of a person other than the owner of the land from which such lumber, wood or other material is to be removed, the selectmen of the town within which said lands are situated, in their discretion, may lay out a right-of-way through the land of any person for the purposes aforesaid, and, upon notice to and hearing of the owner of the lands, shall determine the necessity for and assess the damages occasioned by the laying out of such right-of-way, and such damages shall be paid by the person applying for such right-of-way before the same shall be open for use. Any person aggrieved by the action hereunder of the selectmen shall have the same right of appeal as provided by this chapter.

RSA 231:41, in turn, sets forth the conditions under which such a right-of-way may be used and discontinued. RSA 231:42 then sets forth the notice and hearing requirements that must be followed before the selectmen may lay out such a right-of-way, discontinue it, or award damages arising out of its use.

We hold that RSA 231:40-:42 do not provide a basis upon which Blagbrough may prevail here. Although RSA 231:40 provides an appeal mechanism for a "person aggrieved" by a decision of a board of selectmen laying out such a right-of-way, we have been provided with no such decision by the selectmen in this case. To the extent that Blagbrough seeks damages based upon an asserted violation of RSA 231:40-:42, it has not directed us to any statutory or other legal authority establishing a private right of action to seek both a declaration that RSA 231:40-:42 have been violated and damages. Nor does Blagbrough make any argument as to why we should find an implicit, private right to seek such a declaration and damages. Where there is no explicit or implicit private right of action to seek a declaration of the statute's violation, we will conclude that the statute does not do so. *Cross v. Brown,* 148 N.H. 485, 487 (2002).

### B. Nature of Relief Granted

Blagbrough's final argument is that the trial court erred in requiring A & T to repair the portion of the well line that traverses A & T's property

rather than ordering A & T to pay $3,260 in damages, an amount representing the cost of repairing the entire well line. Blagbrough contends that the trial court's decision constituted an improper award of equitable relief where an adequate legal remedy existed.

The propriety of affording equitable relief rests in the sound discretion of the trial court to be exercised according to the circumstances and exigencies of the case. *Gutbier v. Hannaford Bros. Co.*, 150 N.H. 540, 541 (2004). Because the separation between law and equity is not sharp, courts in New Hampshire have broad discretion in exercising equity jurisdiction. *Thurston Enters., Inc. v. Baldi*, 128 N.H. 760, 764 (1986). We will uphold a trial court's equitable order unless its decision constitutes an unsustainable exercise of discretion. *Gutbier*, 150 N.H. at 541-42.

██ Several circumstances undermine Blagbrough's challenge to the trial court's exercise of discretion. For example, the damaged portion of the well line was located on A & T's property and the well line had not been used as a source of drinking water for the residence on Blagbrough's property since 1985. Further, the trial court found that the "water line was very old and was not in particularly good condition at the time it was accidentally broken by defendant." The trial court also found that "[t]he line consisted of lead piping, which is no longer in use, and was not buried deep enough under ground to conform with modern practice." It also bears noting that during trial and at the hearing on damages, Blagbrough took the position that this was an equity case—not a law suit for damages. Under these circumstances, we cannot conclude that the trial court unsustainably exercised its discretion in ordering A & T to replace the portion of the line lying on its property rather than paying the amount it would cost to replace the entire 900-foot line.

## VII. A & T's Cross-Appeal

Finally, we observe that A & T raised four issues in the notice of its cross-appeal but essentially argued only two in its brief. In its brief, A & T argued that the trial court erred in awarding a portion of Lot A-21-1 to Blagbrough by operation of the doctrine of adverse possession and in ruling that the Dimelings made a mistake in striking the canal easement paragraph from the deed to the Blagbroughs, arguments we already have addressed. To the extent that A & T's notice of appeal raises issues not addressed in this opinion, we deem those issues waived. *See Colla v. Town of Hanover*, 153 N.H. 206, 210 (2006) ("We . . . deem an issue waived when it is raised in a notice of appeal, but is not briefed.").

## VIII. Conclusion

Because we hold that Blagbrough did not satisfy the criteria to acquire a portion of Lot A-21-1 by adverse possession, we remand to the trial court for the entry of an order consistent with that determination. In all other respects, we affirm.

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, C.J., and DALIANIS and GALWAY, JJ., concurred.