**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2024-0204, <u>Yvonne Downes v. Kenneth Sarpi & a.</u>, the court on June 3, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The plaintiff, Yvonne Downes, challenges an order of the Superior Court (<u>Bornstein</u>, J.) approving a recommendation of a Judicial Referee (<u>Houran</u>, R.) finding that the defendants, Kenneth and Donna Sarpi, had established adverse possession of a "disputed area" of land on Risley Road in Rumney and quieting title to the property in their names. On appeal, the plaintiff argues, <u>inter</u> <u>alia</u>, that the trial court erred in concluding that the defendants, and their predecessors in title, exclusively and notoriously used the disputed area for more than 20 years prior to the plaintiff's initiation of this lawsuit. She also argues that, because the disputed area is located within Risley Road, which is a right of way for access to six other property owners, the defendants' use of the area cannot be adverse or exclusive as a matter of law. We conclude that the evidence submitted at trial was insufficient to prove all of the elements of adverse possession by a preponderance of the evidence. Accordingly, we reverse the trial court's order and remand.

I.    <u>Factual Background</u>

As pertinent to this appeal, the trial court found or the record otherwise supports the following facts. The parties own abutting properties on Route 25 in Rumney. The deed to the plaintiff's property excepts and reserves a 20-foot right of way (ROW) known as Risley Road, which is a private dirt road that provides access to other properties in the subdivision. The plaintiff's deed describes the location of the ROW by reference to a recorded subdivision plan which indicates that the ROW is located entirely on the plaintiff's property and runs along the northerly boundary of the plaintiff's property. The deeds in the plaintiff's chain of title state that the ROW is reserved "for the benefit of all lots in the subdivision" and further state that "[t]he owners of lots shall be responsible for one-sixth (1/6) the cost of maintenance and repair to the road."

In 2021, the defendants constructed a fence on the disputed area that caused the traveled portion of the ROW to shift onto portions of the plaintiff's property outside of the ROW. The record suggests that the disputed area consists of a six to eight foot wide "bulge" or "hump" of land located inside the fence installed by the defendants, which lies within the right of way on the plaintiff's property. As a result, the plaintiff filed suit asserting claims of

trespass and nuisance and seeking damages for the alleged encroachment and interferences with the plaintiff's use and enjoyment of her property. The plaintiff also sought injunctive relief requesting that the court order the removal of the fence. The defendants asserted counterclaims alleging that, although their fence was installed on property deeded to the plaintiff, they and their predecessors in title have, at least since 1996, continuously, openly, and exclusively used the disputed area where they installed the fence. In their counterclaims, the defendants asserted two alternative claims requesting that they be quieted title to the disputed area by adverse possession and because the 20-year statutory period for the plaintiff's claims expired prior to her initiation of litigation. See RSA 508:2 (2010).

II.     Trial Testimony and Rulings

A one-day bench trial was held in January 2024 before the judicial referee during which the parties presented seven witnesses and introduced 44 exhibits into evidence. In February, the trial court issued an order finding that the defendants had met their burden of proving adverse possession of the disputed area by a preponderance of the evidence. In its order, the court first observed that the parties did not dispute that the defendants' fence was installed on the plaintiff's property and that, pursuant to two separate surveys of the parties' properties, the disputed area is located entirely within the ROW on the plaintiff's side of the lot boundary. Accordingly, the court determined that resolving the parties' dispute hinged on whether the defendants could meet their burden of proving adverse possession. The court found persuasive evidence introduced by the defendants indicating that, since at least 1996, they and their predecessors in title all maintained the disputed area variously as a lawn, flower or mulch bed; another prior owner had used the area for parking and allowed her child to play on it.

The court also noted that the defendants purchased the property in 2009, and Ms. Sarpi testified to "a variety of work [the defendants] have done in the disputed area over the years." According to Ms. Sarpi, the work involved installing "the flower bed, . . . a series of fences or curbing 'beams' at or near the far edge of the disputed area, and changing portions of the lawn to mulch and a gravel walkway." The court also found significant Ms. Sarpi's testimony about a series of aerial photographs taken from 1994 to 2020 which showed the ROW, "not as the straight roadway shown on the subdivision plan but instead as curving away from . . . the Sarpi house."

The court rejected the plaintiff's argument that "at least until a fence was installed by the [defendants] after 2009, the use of the disputed area by the [defendants] and their predecessors was only occasional and thus insufficient to constitute adverse possession." According to the court, the primary issue was notoriety. The court concluded that "the compelling evidence is that the disputed area was continuously occupied and used by the owners of the

[defendants'] property for more than 20 years, from 1996 until this litigation was commenced." It further found that since 1996 the owners of the defendants' property exercised dominion over the disputed area in ways sufficiently notorious to put the owners of the plaintiff's property "on guard to take preventative action" to protect their property rights. Based upon these findings, the trial court granted the defendants' adverse possession claim and quieted title to the disputed area in their names.

The plaintiff filed a motion to reconsider which the trial court denied. This appeal followed.

III.    Analysis

When reviewing a trial court's decision rendered after a trial on the merits, we will uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous. Maddock v. Higgins, 176 N.H. 182, 187 (2023). We do not decide whether we would have ruled differently, but rather, whether a reasonable person could have reached the same decision based upon the same evidence. Id. It is within the province of the trial court to accept or reject, in whole or in part, whatever evidence was presented, but we review the trial court's application of the law to the facts de novo. Id.

The plaintiff argues that the trial court erred in finding that the use of the disputed area by the defendants' predecessors in title was sufficiently notorious and exclusive such that their use of the property could be "tacked" onto the defendants' use for the purpose of establishing their adverse possession claim. Instead, the plaintiff maintains that the defendants' installation of fences after they purchased the property in July 2009 triggered the notorious and exclusive elements of the adverse possession claim. The defendants counter that the disputed area, although located within the ROW, was not available to vehicle travel since at least 1996 and that the existence of a grassy "hump" or "bump" in the ROW "is enough to put a reasonable person on notice that their property was being possessed." We agree with the plaintiff.

To acquire title to real property by adverse possession, the adverse possessor must show 20 years of adverse, continuous, exclusive, and uninterrupted use of the land claimed sufficient to give notice to the true owner that an adverse claim is being made. Mastroianni v. Wercinski, 158 N.H. 380, 382 (2009). Adverse use is trespassory in nature, and the use of property is trespassory if it consists of a wrong which the fee holder can prevent or for which he or she can obtain damages by way of a legal action. Id. (quotations and citations omitted). Adverse possession of property also requires a measure of notoriety. Id. at 383. The notorious element of an adverse possession claim "rests on the public policy that existing rights in land should not be lost unless

3

the owner has been put on guard sufficiently to enable him or her to take preventative action with reasonable promptness." Id. (citation omitted).

"'The success or failure of a party claiming adverse possession is not determined by the subjective intent or the motives of the adverse possessor.'" Maddock, 176 N.H. at 190 (quoting Blagbrough Family Realty Trust v. A & T Forest Prods., 155 N.H. 29, 33 (2007)). "Rather the acts of the adverse possessor's entry onto and possession of the land should, regardless of the basis of the occupancy, alert the true owner of the cause of action." Id. The law requires more than occasional, trespassory maintenance to perfect adverse title; the use must be sufficiently notorious to justify a presumption that the owner was notified of it. Id. The burden of proving adverse possession is on the party claiming it. Blagbrough, 155 N.H. at 34.

Here, the trial court found:

> [T]he compelling evidence is that the disputed area was continuously occupied and used by the owners of the [defendants'] property for more than 20 years, from 1996 until this litigation was commenced. Before the [defendants] bought their property in 2009, the [prior] owners without break used and maintained the disputed area as their own, maintaining it as a lawn and establishing and maintaining a flower bed in it. The [defendants] at first maintained it as a lawn as well and also rebuilt and maintained the flower bed and then installed fences, berms, gravel walkways and mulch in the disputed area.

Based upon these findings, the trial court concluded that the use of the disputed area by the defendants and their predecessors in title was "sufficiently notorious to put the owners of the [plaintiff's] property on guard" and "sufficient to constitute adverse possession of the disputed area." We conclude that the trial court's application of the law to its factual findings was erroneous.

When evaluating the merits of an adverse possession claim, courts must strictly construe the evidence supporting an adverse possession claim. Maddock, 176 N.H. at 191. In Maddock, we concluded that a party's use and maintenance of disputed property, which involved occasionally clearing brush, raking leaves, removing small trees, and walking on a trail, did not rise to the level of notoriety that would support an adverse possession claim. Id. In Blagbrough, 155 N.H. at 33-34, we ruled that a combination of: (1) routinely entering a parcel for walks and recreational activities; (2) allowing children to play on the disputed parcel; (3) collecting Christmas trees from the area; and (4) mowing grass, removing trees, and planting flowers on the parcel, did not support a claim of adverse possession. Similarly, in this case the record demonstrates that, prior to the installation of fencing and berms, the

4

defendants and the prior owners of their property maintained the disputed area by occasionally mowing it, planting flowers and allowing a child to play on it, and occasionally using it for parking. Consistent with our caselaw, we cannot conclude that these uses are sufficiently notorious to support an adverse possession claim.

In their brief, the defendants suggest that in Mastroianni we rejected the reasoning underlying our ruling in Blagbrough. They are mistaken. In Mastroianni, we found Blagbrough inapposite because that case involved an adverse possession claim based on constructive notice, whereas Mastroianni involved a claim supported by actual notice. See Mastroianni, 158 N.H. at 384. More recently in Maddock, we approvingly cited and relied upon the reasoning and holding in Blagbrough. See Maddock, 176 N.H. at 191. Accordingly, Blagbrough remains good law.

Our review of the record also reveals that the trial court failed to consider the fact that the disputed area was located within a ROW to which multiple property owners, including the defendants, were granted permissive use by deeds that obligated the owners to share the costs associated with maintaining the property. As a result, we disagree with the defendants and the trial court that maintaining a portion of the ROW, to which all of the property owners in the subdivision had permissive access, should have put the owners of the plaintiff's property on notice of an adverse possession claim. See Titcomb v. Anthony, 126 N.H. 434, 438 (1985) (observing that, in the context of a claim of adverse possession necessary to extinguish an easement, "[the] erection of fences or gates . . . is often compatible with the continued use of an easement, and thus is not adverse"). However, when land over which a use is authorized, such as a right of way, is fenced off "and used by the servient owner in a way which indicates the exercise of exclusive dominion by him incompatible with the future exercise of the easement, such use is adverse and thus sufficient to commence the prescriptive period." Id. (quotations and citations omitted).

Here, Ms. Sarpi testified that, after she and her husband purchased the property in 2009, one of the other property owners in the subdivision regularly plowed the ROW, including the disputed area, in order to maintain the width of the 20-foot wide right of way. Ms. Sarpi also testified that the disputed area was "like a crabby grass-type [of] thing" and "it wasn't something I planted. It was [just] there." On this record, we cannot conclude that the evidence supports the trial court's finding that the use of the disputed area by the defendants and their predecessors in title was exclusive and notorious for more than 20 years. When the defendants began constructing fences and installing berms in the disputed area their use of the disputed area became notorious and potentially adverse. See Knight v. Coleman, 19 N.H. 118, 119-20 (1848) (finding that adverse possession occurs when a "fence had been maintained for 20 years in the same place, [the adverse possessor] all the time claiming to own

5

the fence"). However, the defendants conducted these activities within the 20-year prescriptive period prior to the plaintiff's initiation of this action. See RSA 508:2.

Accordingly, we conclude that the trial court erred in granting the defendants' adverse possession claim and quieting title to the disputed area in their names. Given this conclusion, we need not address the plaintiff's remaining arguments. Thus, we reverse the trial court's order and remand.

Reversed and remanded.

MACDONALD, C.J., and DONOVAN and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**